WORTHEN ET AL. V. RATCLIFFE ET AL.

1. TAX TITLE: *Confirmation of donation title. Effect of decree.*
Every question with respect to the assessment of land for taxes, the non-payment of taxes, or the regularity of the proceedings of the collector, is settled by a decree of confirmation of a donation title, if the court rendering the decree had jurisdiction of the petition, and the decree was not obtained by fraudulent misrepresentations or concealment of facts.

2. SAME: *Same.*
The petitioner for the confirmation of a tax title need not be in possession of the land, nor is it necessary that the land be unoccupied. The proceeding is *in rem*, and the decree is conclusive as well against the absent claimant as any who may intervene and contest the petitioner's right.

3. DONATION TITLE: *Infant donee.*
An infant donee of land forfeited for taxes is exempt from the duty of making the improvements required by the statute, but is not exempt from the duty to pay to the owner double the value of the improvements on the land at the time of the donation.

4. SAME: *The improvements, who is the owner of.*
The owner of the improvements on donated land is the person who made them, whether the owner of the land before forfeiture, or he or any other person since the forfeiture.

5. SAME: *Payment for improvements, condition subsequent.*
The condition of forfeiture of donated land, upon failure to pay to the owner of the improvements double their value in three months from the date of the deed, is a condition subsequent. The estate vests in the donee with the delivery of the deed, but subject to defeasance by non-performance of the condition; and may be defeated by the owner of the improvement donating the land as provided by the statute.

Worthen et al. v. Ratcliffe et al.

6. FRAUD: *By infant.*
Infancy furnishes no excuse for fraud, and is no protection from relief sought against it, whether committed by himself or by another for his benefit.

7. CHANCERY PRACTICE: *Relief against conditions subsequent.*
A court of equity will not lend its aid to destroy an estate for the breach of a condition subsequent, but will relieve against the consequences whenever the case admits of compensation in damages, as where the condition is to pay money.

8. DONATION LAND: *Improvement on, right in; repeal of the act.*
The owner of an improvement on donated land previous to the repeal of the act of 1851, had a vested right to be paid double their value, which was not cut off by the repeal of that act.

APPEAL from *Pulaski* Chancery Court.
Hon. DAVID M. CARROLL, Chancellor.

*Clark & Williams and C. B. Moore* for appellant.

An Auditor's deed is *prima facie* evidence of regularity, and imports title good on its face. *17 Ark., 546; 7 Ib., 424; 15 Ark., 331; Ib., 365.*

An abandoned improvement grown up, gives no right, being no improvement. (*24 Ark., 33.*) The act of eleventh of January, 1851 (*Gantt's Dig., sec. 3905*), was passed after this land was forfeited and at a time when it was subject to donation. Hanger made no improvement until 1857, and then the land was forfeited to the State; not owning the land he could own no improvement. The law upon which the Chancellor relied, was repealed by acts of 1879, p. 72, and with its repeal went every right appellees had. The remedy was special and statutory and must be strictly pursued. (*29 Ark., 174; 15 Ohio St., 114; 13 Barb., 209; 2 Comstock, 9; Sedgwick Stat. and Const. Law, 94; 28 Penn. Stat., 9; 35 Ib., 263; 44 Ib., 332; 1 Hill, S. C., 55.*) Hence, if the statute were repealed before any rights were perfected under it, the inchoate right is gone, etc.

Mills' attempt to convey was a nullity. *Gantt's Digest,* sec. *3896.*

The provision of sec. 3893, that the owner should be paid double value, etc., created a mere debt which was barred in three years. *Section 3905* gave a remedy for this debt, by declaring a forfeiture, etc., upon failure to pay, as a *condition subsequent.* It did not declare the deed *void,* but on the contrary recognizes its validity. No affidavit of improvement or failure to pay was ever made, nor offer to *pay all arrearages of taxes and penalties.*

The decree of confirmation was valid, and cured all irregularities, if there were any, and was a complete *bar* against *any* and *all persons.* (*Gantt's Dig.,* sec. *791.*) It was a suit *in rem* against the world. The regularity of this donation deed, its legality, etc., were the very matters in issue, and the parties are concluded. *35 Ark., 337; 18 Wall., 467; 11 Ark., 157; 13 Ib., 33; 20 Ib., 12.*

There was no *fraud* in obtaining the decree of confirmation. No fraud or *deception practiced upon the unsuccessful party,* by which he was *prevented from fully exhibiting* his case, etc. *98 U. S.,61; 20 Conn., 544; 21 Iowa, 58; 12 N. Y., Dobbins v. Pearce.*

The confirmation statute applies to all tax sales of land, whether *adversely held* or not. Adverse possession is no defense. *20 Ark., 114; 22 Ib., 559; 24 Ib., 519; 18 Ib., 441; Hempst. C. C., 649; 21 Ib., 369; 5 Ark., 424; 22 Ib., 118.*

It makes no difference in whose name the forfeiture is taken, whether resident or non-resident. *Rev. Stat., ch. 128, sec. 10; 19 Ark., 602; 20 Ark., 277.*

Future payment of taxes, and future payment for improvements, are conditions subsequent, which no one but the grantor can enforce. In grants by the sovereign, the entry for breach can not be had except by statute or some

like expression of sovereign will. This will was pointed out as to payment for improvement of another. But with the repeal of that act went all remedy. (*4 Kent's Com., marg. pp. 122-3; Lewis v. Ridge, Cro. Eliz., 863.*) Conditions subsequent are not favored in law, and are construed strictly (*Kent's Com., sec. 4, marg. pp. 129-130*); and courts of equity will often relieve against, and rarely enforce, these forfeitures. (*Story's Eq., secs. 1312 to 1317.*) Even if the condition *was broken* after the ninety days, Worthen had an *estate* descendable and devisable, which no one could take advantage of but the grantor. *4 Kent's Com., 122; 21 Wall, 44.*

If appellees ever had any right to enter for breach of condition, or to put the machinery in motion by buying the land and with it the right of entry, they are barred by limitation. They are not free from negligence. No matter how gross a fraud may be, if there is no jurisdiction or power to remedy it, the court can not do so. The right and remedy were created by statute, and that being repealed there is none whatever. *4 Sawyer, 42.*

It was too late to file a bill of review. (*Gould's Dig., ch. 28, sec. 28.*) As to when a bill of review, or an original bill in the nature of one, will lie, see *Story Eq. Pl., sec. 404; 39 Ark., 107; Ib., 270.*

*W. C. Ratcliffe* for Ratcliffe and wife.

Mills donated the land and within eighteen months placed the required improvements thereon. This vested title in him. (*Gould's Dig., sec. 4, ch. 101; Gantt's Dig., sec. 3894.*) To make or *cause* to be made the required improvements was the only condition necessary to vest title. No justice's certificate necessary to obtain title. This was matter of proof. (*Gould's Dig., sec. 5, ch. 101; Gantt's Dig., sec. 3895.*) The marking "reverted" by the Auditor had no

effect.   Worthen had notice and was put on inquiry.   His deed was a nullity.   *Ib.*

Again, Mills sold *after* his improvements were made. This he had a right to do.   *Gould's Digest, sec. 6, chap. 101; Gantt's Digest, sec. 3896.*

He could only forfeit by selling *before* improvements were made.   Appellants' assertion in their brief, that no conveyance could be made unless a copy of the certificate of the justice accompanied the deed, is positively negatived by the above section.   The appellees hold under conveyance from Mills, and have a title under said forfeiture superior to Worthen.

There were improvements on the premises at the time Worthen donated—the owner of said improvements being on said land and in adverse possession at the time.   He did not within three months pay to the owner double the value thereof, and did not file his receipt therefor with the Auditor within  thirty days, or at any other time.   He was required to  do  both, or else "forfeit all right to  the land." He forfeited all right.   *Gould's  Digest, chap. 101, sec. 19 ; Gantt's Digest, sec. 3905.*

See also *Simpson v.  Robinson, 37 Ark., p. 232*, and the able comments on the law of January 11, 1851, commencing at page 138.

There is no exception in favor of a  minor.'   *Lacefield v. Stell, 21 Ark., p. 437.*

It makes no difference whether the  improvements were made before or after forfeiture.   *31 Ark., 528.*

The deed was void at the time it was presented  for confirmation,  and  the confirmation could  not make it valid. Certain  important facts  in this *ex parte* proceeding were kept from the court, and  the decree  was obtained by legal fraud.   *22 Ark., 121.*

There was no service, there was actual, adverse and con-

tinuous possession. Those in adverse possession should have had notice. Ejectment the only remedy. The confirmation proceedings were fraudulent and void. *1 Ark., 472; 18 Ib., 441; 20 Ib., 114; Ib., 277; 22 Ib., 556.*

The proceeding to confirm is in the nature of a bill of peace, or to quiet title, and petitioner must be in actual or constructive possession. This is not modified by statute. (*Gould's Dig., ch. 170, sec. 1; Gantt's Dig., sec. 786.*) There being no process and service the decree is void. *Gantt's Dig., sec. 4738; Act Feb. 7, 1859.*

The decree evidently fraudulent and void, and the court that rendered it had power to so declare. The owners had no notice of this cloud until the ejectment suit, when they immediately took steps to remove it. (*33 Ark., 162; Freeman on Judg., secs. 99, 100, 491, 495.*) The court had power and discretion to correct, and this court will not interfere. *Ib.,* and *98 U. S., 61.*

The improvements were substantial and valuable. *37 Ark., 132.*

The repeal of *section 19, chapter 101, Gould's Digest* (*Gantt's sec. 3905*), by act of 1879, did not revive Worthen's dead rights if he ever had any. He had forfeited all his interests, and owners were not required to do anything to perfect the forfeiture.

*B. C. Brown* for appellee, Hanger.

1. A proper assessment is absolutely necessary to the validity of a tax sale. *21 Ark., 581; 23 Ib., 374; 22 Ib., 559; 30 Ib., 610; 31 Ib., 341; 32 Ib., 145, 139, 148-9.*

There having been no valid assessment made nor tax levied, there could be no forfeiture to the State. If these facts had been brought to the attention of the court, no decree of confirmation would have been entered. Evidently all the petitioner did was to produce his Auditor's deed which was by statute *prima facie* evidence. The pro-

duction of this *prima facie* evidence and the concealment of the real facts constituted a fraud. The deed was void and no confirmation can make good that which of itself is void.

*Section 6, chapter 170, Gantt's Digest,* attempts to cure informality or *illegality* in the proceedings. The Legislature can not authorize a court to confirm a sale, which, because of manifest illegality, was itself absolutely void. (*32 Ark., 131.*) It was never the intention of the Legislature, nor had it the power to confiscate the property of a citizen without assessment or levy of a tax, and the production of mere *prima facie* evidence and the consequent concealment of the fact that no assessment or levy had ever been properly made, was such a fraudulent concealment as is contemplated in *22 Ark., 121.* (See *Blackwell on Tax Titles, sec. 106, and p. 154; Cooley on Tax., p. 259 and note 2.*) Such illegality can not be cured in an *ex parte* proceeding.

While fraud may not be committed by a baby, it may be and *was for* a baby. *1 Fonbl. Eq., 71, 152; Sug., 522; 1 Wash. Rep., 299; Marbury v. Bank, 11 Wheat; 17 Ark., 641.*

2. Worthen failed to pay the owner of the improvement the value thereof, or file with the Auditor the receipt within the time prescribed. *Acts 1881, p. 142.*

To avoid the effect of this appellants in their brief say that this act was repealed in 1879, and that on such repeal, all penalties annexed to the title fell to the ground. There are cases where penalties have not taken effect, in which the repeal of the law puts an end to any attempt to enforce the penalty. But who ever heard that the repeal of the law after the penalty had taken effect restored a title which had been forfeited? Treating this as a penalty and not as a condition annexed to the title—treating it even as a condition subsequent—it had taken effect more than two

years before the attempted confirmation. If George Worthen failed within the three months provided by law, the act still being in full force and effect, to file in the Auditor's office the receipt of the owner for the value of the improvements upon the land which the State had attempted to give him, he thereby then and there forfeited all title, and the attempt to confirm the title thereby forfeited was a manifest and palpable fraud.

It is true that the owners of the land did not avail themselves of the right to purchase from the State given by the statute of 1840; but this could in no wise aid Worthen. His title was forfeited by his own neglect, and it required no act upon the part of the owners to make that forfeiture complete.

3. This court has never held that a party in constructive possession may, by *ex parte* proceeding, procure confirmation against one actually in adverse possession. In such a case a court of chancery would have no jurisdiction; the remedy is by ejectment.

Appellants are estopped. (*Bigelow on Estoppel, p. 357.*) Appellees and grantors have been in actual possession nearly twenty-one years, and during all that time Worthen laid by and saw them, or might have seen them making improvements and exercising acts of ownership, and made no attempt to recover.

SMITH, J. Mrs. Worthen brought ejectment in the Pulaski Circuit Court against Ratcliffe and wife and Fred. Hanger, for forty acres of land. Her title is derived by inheritance from her son George, who in his lifetime held a donation deed from the State, executed in the year 1858, and based upon a forfeiture for the non-payment of taxes for the year 1840. This deed had been confirmed in 1861, by decree of the Pulaski Chancery Court.

22

The defendants exhibited a chain of title connecting themselves with the original patentee of the United States, attacked the forfeiture for taxes as erroneous, and set up sundry equitable defenses.   On their motion the cause was transferred to the Chancery Court, where it was consolidated with a suit there pending involving the same subject matter, in which Ratcliffe and wife were plaintiffs and Mrs. Worthen and the brothers and sister of George Worthen, deceased, were defendants.   This last mentioned suit was in the nature of a bill of review to vacate the decree of confirmation of the tax title and to restrain the prosecution of the action of ejectment until the matters in the bill could be heard and determined.

This bill alleged that the plaintiffs' grantors were in actual adverse possession of the land at the date of said donation and of the decree of confirmation; that this fact was known to the father of the donee, who procured the donation for said infant, and the confirmation of his title; that, notwithstanding, they were not made parties to that proceeding, no process was served upon them, nor did they appear, but the application was entirely ex parte, only the statutory notice for publication in a newspaper having been given.   Further, that there were improvements on the land at the time it was donated, belonging to those under whom the plaintiffs claimed, and that double the value of those improvements never having been paid or tendered to the owner within three months, according to the condition annexed to the donation, the deed itself became void and the estate never vested.   And that the concealment of the adverse occupation, of the existence of improvements, and of the failure to pay for the same, was such a fraud upon the jurisdiction of the court, as well as upon the rights of the parties adversely interested, as to render the decree of confirmation a nullity.

The answer to the bill put in issue the cultivation of the soil, the ownership of the improvements and the possession of the plaintiffs' grantor at the date of the donation. There was no pretense that the donee had ever paid any one for the improvements.

The Chancellor canceled the donation deed for failure to pay for improvements, and set aside the confirmation for fraud.

The cause was heard upon documentary evidence, the deposition of Peter Hanger and the following agreed statement of facts :

" It is agreed that the following statement in connection with the pleadings and other proofs shall be taken as the testimony in the above entitled cause, as though fully pleaded and proven.

" That the said George Worthen was born on the seventeenth day of October, 1858, and that the said Louise B. Worthen, R. W. Worthen and W. B. Worthen and Lizzie Agee are his only heirs, he having died November 4, 1879, intestate and unmarried ; that the said Maggie M. Ratcliffe and Frederick Hanger have a regular chain of conveyances from the United States to the said land, to wit, the southeast quarter of the northwest quarter of section thirty, township one north, range eleven west, in Pulaski County, Arkansas; the United States having conveyed her title to one James B. Keats, May 16, 1836, who conveyed, April 4, 1837, to Seaborn Hill, who died about the year 1844, leaving an heir, who afterwards intermarried with F. H. Moody, and conveyed the said land April 27, 1857, to Peter Hanger, and so on down to the said Maggie M. and Frederick ; that the said James B. Keats was, in 1840, a resident of Pulaski County, Arkansas, and the said Seaborn Hill was, at the time he purchased said land, a non-resident of Pulaski County, and so re-

mained until his death, in 1844; that the said land had been occupied and partially improved prior to the year 1857, but same had been abandoned and unoccupied until April, 1857, when same was in actual possession of the grantors of said Maggie M. and Frederick, and has been actually occupied by their grantors and themselves ever since; that neither George Worthen nor his heirs herein named were ever in actual possession of said land or any part thereof; that the said land was returned into the Auditor's office as forfeited to the State of Arkansas, for the alleged non-payment of taxes for the year 1840, and was offered for sale by the Auditor in 1840; that the same was reported unsold, and returned into his office as land subject to donation; that the same was 'donated' by Caleb W. Mills, November 29, 1855, and the same relinquished by him to the State, he failing to make improvements, and re-donated by said Caleb W. Mills, May 6, 1857, and afterwards there was entered opposite said latter donation on the Auditor's books the words 'adult; reverted.'

"A donation deed was then executed to George Worthen under the same alleged forfeiture of 1840, said deed bearing date November 29, 1858; that the improvements placed on the said land from May 6, 1857, to November 6, 1858 (the time of last donation by Caleb W. Mills), to the time at which the eighteen months in which he had to make improvements thereon, were made by F. H. Moody and Peter Hanger, who at that time held said land by conveyance from original owners as purchasers from the United States Government; that the said Caleb W. Mills did not make any improvements thereon during the said time in his own proper person, nor did he hire any work done thereon, nor did he expend or lay out any money for said improvements; that the said Caleb W. Mills, on January 15, 1858, quit-claimed his interest in the said land by

deed to F. H. Moody above-named as one of the grantors of the said Maggie M. and Frederick; that the improvements on the said land at this time, to wit, on the twenty-ninth of September, 1882, are worth the sum of $5,000, and were placed thereon by Maggie M. and Frederick, or their grantors, before suit was instituted by said Louisa B. Worthen in Pulaski Circuit Court.

"The records in the office of the county clerk of Pulaski County show that the southeast quarter of southwest quarter of section thirty (30), township one (1) north, range eleven (11) west, appears on the non-resident list of lands not given in for taxes, and therefore taxed in the original owners' names for 1840, filed in the clerk's office September 15, 1840, taxed in the name of James B. Keats, and does not appear on the assessment list for the county of Pulaski, filed March 25, 1840 (and only appears as assessed for 1840 as above.)"

The deposition of Peter Hanger is in the following words:

"I am acquainted with the tract of land in controversy herein, to wit, the southeast quarter of northwest quarter of section thirty, township one north, range eleven west, and I know the boundary thereof. It is known as part of the Seaborn Hill land, and was owned on April 28, 1857, by Mrs. Moody, the only child and heir of Seaborn Hill. At that date I purchased same from F. H. Moody and wife. At the time I purchased there was an old orchard on the spot and adjoining where the dwelling house now stands, or near it. Also there was across the bayou on the same tract, a small clearing of six or seven acres, which had grown up in cottonwood trees. I immediately made a pole fence around this out of the small cottonwood, inclosing the whole six or seven acres, and, I think, raised a crop thereon during the year. I commenced improving

the place at this time, and worked on same continuously after this. A small house was on the ridge near where the dwelling house now stands and was occupied by one Harris, who is now dead, and also another house was built some time, either fall or winter, 1857, and was in the spring of 1858 occupied by William H. Brown, who is also dead. In December, 1857, I sold one-half of this tract of land to F. H. Moody, and we commenced work at this time in partnership. A mill was purchased in March, 1858, in St. Louis, and was set up under the superintendency of W. H. Brown, on the forty acres adjoining, about thirty yards below the line of this tract. It may be not so far. We cultivated during the year 1858 the six or seven acres heretofore inclosed, and commenced clearing at other points on the same tract. In the fall of 1858 we had considerably more land ready for cultivation.

"I get the exact dates from deeds of record in my possession. Up to November 1, 1858, there were two houses on said forty acres and some ten acres or more in cultivation, and other lands deadened—say some three hundred ($300) to five hundred ($500) dollars' worth of improvements. I went into possession of said lands in the spring of 1857 and remained until sold in the year 1868. I never had any notice of any proceedings to confirm tax title, or of any claim of any other person for the said lands. My possession during said time was quiet and undisturbed."

The objection to the forfeiture for taxes was that the land was assessed for the year 1840 in the name of James B. Keats, a resident of the county, instead of Seaborn Hill, the actual owner, who was a non-resident, and that, notwithstanding its taxation in the name of a resident, it was put upon the non-resident list and proceeded against accordingly. The revenue law then in force made considerable difference between the lands of residents and

non-residents of a county, especially in the mode of enforcing the payment of taxes by compulsory sales. But it was expressly provided that "no sale of any land for the payment of taxes shall be considered invalid on account of its having been charged in the tax book in any other name than that of the rightful owner, if such lands be in other respects sufficiently described in the tax book, and the taxes for which the same is sold be due and unpaid at the time of such sale." *Rev. Stat., ch. 128, sec. 99.*

In *Merrick & Fenno v. Hutt, 15 Ark., 331,* this same assessment of Pulaski County for 1840, was involved. There the land had been assessed twice; once on the resident list, to the true owner, and again in the name of a nonresident, who had no interest in it. The taxes were not paid by any one, and the land was proceeded against as the property of a non-resident, and was forfeited as such.

This court said: "The name of the owner is comparatively unimportant. The description of the land in such manner as that it may be identified, and the non-payment of the tax, are the two considerations of the most importance in a tax sale. The particular land taxed stands liable for it, no matter who may be the owner or into whosesoever hands the lands may pass;" and the forfeiture was upheld.

The same point was adjudged in *Kinsworthy v. Mitchell, 21 Ark., 145,* followed by *Garabaldi v. Jenkins, 27 Ark., 453.* And in *Gossett v. Kent, 19 Ark., 602,* it was decided that when the assessor returns his list, and the process of assessment is completed by the action of the county court, the condition of the land as being the property of residents or non-residents becomes fixed for the purpose of taxation for that year.

In the present case the land, having been entered in 1836, was subject to taxation. It was assessed for taxation

and it is immaterial in whose name the assessment was, or whether it was placed on the resident or non-resident list, provided the proceeding was consistent, and the subsequent sale followed the assessment. The taxes remained unpaid, and it was properly forfeited.

This conclusion is reached independently of the decree of confirmation.

1. Confirm- ation of donation title: Ef- fect of.

But, in truth, every question with respect to the assessment of the land in controversy, or the non-payment of taxes, or the regularity of the proceedings of the sheriff and collector, is concluded by that decree ; provided the court which rendered it had jurisdiction of the petition, and provided the decree was not obtained by a fraudulent misrepresentation or concealment of facts. *Thomas v. Lawson, 21 How., 331 ; Buckingham v. Hallett, 24 Ark., 521.*

2. SAME: Possession at time of the peti- tion for confirma- tion.

It is contended that no effect should be given to this confirmation, because the land was at the time adversely held. It is perhaps unfortunate that this relief has not been confined to purchasers who were in the actual or constructive possession of the lands purchased. The statute does but apply an old chancery remedy to a case special in its form. It is, in substance, a bill of peace. (*Overman v. Parker, 18 How., 137.*) And in other respects the proceeding is governed by ordinary rules of chancery practice. *Payne v. Danely, 18 Ark., 441.*

This view derives support, too, from the language of the statute. Its scope and design appear to be to protect purchasers at sheriffs', Auditor's and judicial sales, from eviction, or from any responsibility as possessors. *Gantt's Dig., sec. 786.*

But the statute does not, in so many words, say that the petitioner for confirmation must be in possession, or else the land be unoccupied, in which case the legal title might be considered as drawing the constructive pos-

sessions to its holder.  Nor has this construction been heretofore adopted.  The petition has been assimilated to a proceeding *in rem*, where the jurisdiction of the court over the controversy is founded on the presence of the property, and the decree becomes conclusive as well against the absent claimant, as against any who may intervene and contest the petitioner's rights.  And the adjudication has been without any reference to or effect upon the possession.  *Block v. Percifield, 1 Ark., 472; Evans v. Percifield, 5 Ib., 424; Bonnell v. Roane, 20 Ib., 114; Moses v. Hawkins, 22 Ib., 550; Scott v. Watkins, 22 Ib., 556.*

It was also contended that the donation deed to George Worthen became void because the donee did not comply with the conditions annexed to his estate.

This point also is not open to contestation if effect is to be given to the decree of confirmation, because it is a matter that might then have been litigated.

It is therefore necessary to consider whether any fraud was committed in procuring that decree.  One of the conditions upon which the grant was made is set out in the act of January 11, 1851.

Section 1.  Be it enacted by the General Assembly of the State of Arkansas:  That as the present laws provide that if any individual should obtain a donation to a tract of improved land, he or she shall pay to the person or persons owning such improvement double the value thereof, but as no time is now fixed by law within which such payment for said improvement shall be made, it shall be the duty of each and every person who has obtained a donation to a tract of improved land, within three months after the passage of this act, or within three months from the date of the deed, to pay to the owner of such improvement double the value thereof, and take from such person his or her receipt for the amount of money so paid, which

receipt shall within thirty days thereafter be filed with the Auditor; and should any such improvements not be paid for by the donee within the time prescribed, such donee shall forfeit all right to the land which had been donated, and the owner of such improvement, upon filing with the Auditor his affidavit, stating that he owned an improvement on the land at the time it was donated, and that the donee has not paid or tendered to him double the value of such improvements, if the time for making such payments and for filing the receipt as evidence thereof shall have elapsed, shall be allowed to purchase said land including his improvement, by paying all arrearages of taxes which may be charged thereon, in the same manner as if the land had never been donated, and the Auditor shall execute to such purchaser a deed for the land so purchased, etc.

3. Infant donee must pay for improvements.

The two previous donations of this land to Caleb W. Mills had been canceled by the Auditor for failure to make the improvements which the law required of an adult. Worthen, as an infant, was exempt from the duty to improve; but not from the duty to pay the owner double the value of his improvements. *Lacefield v. Stell, 21 Ark., 437.*

4. Improvements: Who is the owner of.

And the owner of the improvement, within the purview of the statute, is he who has made it. If made before the forfeiture, the former owner of the land owns also the improvements. But improvements made subsequently to the forfeiture, whether by the former proprietor or by a stranger who had no interest in the soil, are also protected. (*Surginer v. Paddock, 31 Ark., 528; Simpson v. Robinson, 37 Ib., 132.*) Peter Hanger was the owner of the improvement in this case, and Worthen never paid or offered to pay him for it. The State might have re donated the land to Hanger upon the filing of the prescribed affidavit of non-payment.

But Hanger and those claiming under him have been

ignorant of Worthen's claim. This is evident from their conduct in not applying for a re-donation and in erecting expensive improvements; and the act of January 11, 1851, was repealed by the act of March 14, 1879.

What, then, is the effect of Worthen's non-compliance with the condition annexed by law to his grant and referred to in his deed?

If the payment of double the value of the improve- **5. Payment for improvements: Condition subsequent** ments within three months was a condition precedent, then the estate never vested in him, and not even a court of chancery can relieve from the consequences of non-performance. But if the act required to be done is not to precede the vesting of the estate, but may as well be done afterwards, the law permits the estate to endure after breach of the condition, however absolute the words of forfeiture may be, until the grantor, his heirs or successors, enters and avoids the estate.

Now, Worthen's deed contained words of present grant, and he was given three months within which to pay for the improvements. This is a condition subsequent. The deed imports an immediate transfer of the title and vests the fee simple of the estate in the grantee, subject to be defeated by a neglect or refusal to perform the conditions. *2 Black. Com.*, *153, et seq.; 4 Kent's Com.*, *122, et seq.; 2 Washb. Real Prop., chapter on Estates upon Condition; notes to Dumpors case, 1 Smith's Lead. Cases, 5th Am. ed., 97, et seq.*

A reference to a few adjudged cases will make this plain. There is *Sneed v. Ward, 5 Dana, 187,* where a grant of land made by royal authority in 1872, reserved an annual quit rent in fee and required certain improvements to be made within three years, and declared that for a failure to make the improvements and pay the rent, the estate should *ipso facto* cease and determine. These were held to be

conditions subsequent, and the patent vested the title immediately.

In *Schulenberg v. Harrisman, 21 Wall., 44,* Congress had granted public lands to the State of Wisconsin to aid in the construction of railroads in that State.

The language of the act was "that there be and is hereby granted to the State of Wisconsin" the lands specified.

The lands were to be subject to the disposal of the State Legislature, and it was provided in what manner sales should be made.   And it was enacted that if the road be not completed within ten years no further sales should be made and the lands unsold shall revert to the United States. The State accepted the grant upon these terms, but the road was not constructed within the period prescribed, and it was held that the act passed the title, which remained unimpaired in the grantee, notwithstanding the non-performance of the subsequent condition, no action having been taken either by legislation or judicial proceedings to enforce a forfeiture.   In *Underhill v. Saratoga R. Co., 20 Barb., 455,* the grant was upon condition that the grantee should build and maintain a water-tight embankment over a certain brook crossing the land conveyed, and that said embankment, with the flood-gates and sluice-ways therein, might be used for hydraulic purposes by the grantor, their heirs and assigns.   The railroad company, immediately after the execution of the deed, entered into the possession of the land, but never constructed the dam. In an action by the assignee of the grantors to recover possession of the lands, the condition was held to be a subsequent one.   See also *Ruch v. Rock Island, 97 U. S., 693.*

6. Confirmation obtained by fraud.

The papers in the confirmation proceeding have been lost, and it is impossible to say what allegations the petition contained.   But it must either have alleged that there were no improvements on the lands, or that double the value of

them had been paid to the owner, or, as is more probable, have said nothing on the subject of improvements. For it is not to be supposed that any court would have confirmed Worthen's title with a knowledge that the condition upon which it was held had never been performed. Now, whatever course was pursued by or for the petitioner in this respect, the confirmation could not have been obtained without the suggestion of a falsehood or the suppression of the truth, and it is no answer to say that Worthen was then an infant.

Infancy furnishes no excuse for fraud, and is no protection from relief sought against it, whether committed by the infant himself, or by others for his benefit.

*Infancy no excuse for fraud.*

However, a court of equity will never lend its aid to destroy an estate for the breach of a condition subsequent, but will relieve against the consequences wherever the case admits of a certain compensation in damages, as where the condition is to pay money. It regards conditions as mere remedies to enforce the fulfillment of obligations and will not allow them to be perverted from their purpose either on one side or the other. Thus, where a testator devised an estate to his two sons, they paying to each of his two daughters a certain sum within one year after his decease, and the money was not paid within the time prescribed; on ejectment brought by one of the daughters for her undivided one-fourth share of the land, as one of the four heirs of her father, it was held she was entitled to recover; because to entitle themselves to the estate the sons must have performed the condition strictly. But afterwards the sons tendered the money and applied to a court of equity for relief against the legal effect of the condition broken, and they were allowed to regain their title to the estate, which had been forfeited at law by non-performance of the condition, upon payment of the money and inter-

*CHANCERY PRACTICE: Relief against conditions subsequent*

est.  *Wheeler v. Walker, 2 Conn., 196; Walker v. Wheeler, Ib., 299.*

Vested right in improvements not divested by repeal of the law.

The repeal of the act of 1851 does not cut off Hanger's vested rights to be paid double the value of his improvements.

And Mrs. Ratcliffe and Fred Hanger holding under conveyances from him, which carried not alone the land, but the improvements upon it, must be deemed to have succeeded to his rights in the premises.

Nor is the lapse of time any just impediment to the working out of the respective rights and equities of these parties. Laying the decree of confirmation out of the case, it would be a sufficient answer to the action of ejectment to say that Worthen had not performed the condition attached to his estate within the time limited by law.

If now a court of equity relieves his heirs from a forfeiture by dispensing with the literal performance of the condition, it will do so only upon the condition of doing justice.

The decree below is affirmed so far as it vacates the decree of confirmation; but in so far as it cancels the donation deed it is reversed, and a decree will be entered here, enjoining the heirs of Worthen from prosecuting any action against the assignees of Peter Hanger, until they shall pay into this court for the benefit of Mrs. Ratcliffe and Fred Hanger, double the value of the improvements, say $800 with six per cent. interest from the twenty-eighth day of February, 1859, until paid.

And upon such payment the cause will be remanded to the Pulaski Circuit Court, there to proceed as an action of ejectment, with leave to the defendants to set up the improvements made since the twenty-eighth day of February, 1859, under the betterment act of March 8, 1883, if they

shall be so advised. The appellants must pay all costs below, but will recover their costs in this court.

EAKIN, J. (Dissenting.) I concur with my associates in thinking that the proceedings in the confirmation suit are not binding upon the appellees. I am unable to agree with them, however, upon the grounds of this conclusion.

I can see no fraud in the proceeding for confirmation; none is charged to have been actively perpetrated by any device or means to deceive the court or any one interested. The complainant, in the confirmation suit, simply pursued what he supposed to be a statutory remedy applicable to his case. It was not his duty to advise the court that there were improvements on the land that he had not paid double value for. It was only his duty to refrain from any improper artifice to divert attention from the fact. The matter of unpaid improvements, if avoidable at all as a defense, and if the suit were a proper suit, was matter in defense. No personal notice of the suit to occupants of the land, nor to owners of the improvements was required. The statute may be an improvident one, but I perceive no fraud in the matter. It is simply an attempt of one to avail himself of what he supposed to be a statutory right.

But I very seriously doubt whether the statute for the confirmation of tax titles, or the extraordinary proceedings *in rem* for the purpose, have any application to donations. If not, they bind no one not served with notice.

There were no provisions for donating lands when the confirmation act was passed on the third of November, 1836. It is confined to sales made by sheriffs and Auditors, or under orders of courts of record. (*Rev. Statutes, ch. 149, sec. 1.*) Donations are not sales.

It is thus I come into concurrence with the court in holding that the appellants can derive no aid from the decree confirming their title. They must stand upon the original deed of donation. But this, as the court holds, and I think properly, conferred title *in presenti*. The failure to pay double value for the improvements was a condition subsequent, upon which title was to revert to the State, not a conditional limitation of the estate granted upon which the title was to go over to the owner of the improvements. He could only get title from the State by showing that he had not been paid, and obtaining an independent deed. Hanger's title was wholly lost by forfeiture to the State, and vested in the State entirely. The State, as a matter of pure grace, imposed on the donee a trust to pay the owner double the value of his improvements at one time, from 1851 to 1879; it also gave said owner the right, on failure of the donee, to apply to the State and obtain a new donation; not to be restored to his old title, for that was gone. This right is now taken away, as all matters of grace may be, and the State alone could enforce the forfeiture; she has not done so, and the title remains in the donee. But I think the trust remains with it, still adhering. I do not think it was the intention of the Legislature to absolve the donee from that duty, and thus enable him to take advantage of his own wrong.

I think one who takes land with these conditions, assumes such a trust as a charge upon the land itself. There is certainly quite as much reason to suppose that, as that a purchaser assumes a trust to pay purchase money.

In this view I do not concur in the special directions for a decree now made. The Chancellor, treating the confirmation of the donation as a nullity, should have nevertheless ratified the title of the donee, but should have decreed and enforced a lien upon it for double value of improvements

existing at the time of donation. If not paid he should have ordered a sale for payment, and thus have closed the matter by leaving a title in some one which would enable the owner of the land to take and enjoy it. Hanger and his successors have no title at all, and have not had since the original forfeiture for taxes, if that forfeiture were legal.

If the right of the appellants to prosecute their eject- ment depends upon the payment now of the double value of improvements, they may not find it convenient or pos- sible to do so, and the case will close with a forfeiture in effect not in favor of the State, but in favor of Hanger or those succeeding to his title. This would be either to con- vert the condition of forfeiture into a limitation over, for which the statute affords no warrant, or it would present the anomalous case of one having no shadow of title, left in the undisturbed enjoyment of property against all the world. I think a court of chancery can do better than that, and close everything by the declaration and en- forcement of a trust, thus leaving all loose ends neatly tied.

I think, too, this court ought not to find the value of the improvements upon the evidence in the transcript. There is not enough to act on. Peter Hanger, speaking of his own property, and from memory, after a long time, says they were worth from three to five hundred dollars. That is all. I think this evidence too vague. The court *splits the difference*, and fixes the value at $400. That is, a man makes a wide and quite slashing margin of possible value, and it is taken as just half true. We can not say that the witness, if called to be more definite, would have said the improvements were worth about $400. Indeed, there was no finding at all as to value below. The value did not come into litigation. The cause was decided upon points

23

independent of value. This was all erroneous, but not irreparable. The case should be remanded, with directions to the Chancellor to do now what he before considered immaterial to be done ; that is, find the value of the improvements. We are not compelled here to guess at the value, and I respectfully submit we can not do that equitably. The rule that we will remand a case for new proofs is quite proper with regard to proofs or issues made determining rights, and upon which there have been findings, but has no proper application to such proofs as are necessary to equitable adjustment on principles here first directed to be applied. In other words, the rule does not prevent the remanding of this case for all proper references to a Master below, or for the determination of values by the Chancellor, if he should conclude a Master not to be necessary.

I think the decree should be reversed and the cause remanded, with directions to the Chancellor to ascertain the value of the improvements at the time of the donation, either by reference or by himself taking the account, with such aids as he may use in accordance with equity practice, and to declare and enforce by the usual methods a lien for double that value, with interest.

I have not alluded to claims under the recent betterment act, as that was not in force pending the litigation. If the appellees have rights under that, I see no objection to allowing them to be brought in by supplemental bill after remand of the cause, so that the whole controversy may be determined in chancery.