## SALESKI vs. BOYD.

1. APPEAL:

   No appeal lies from a decree by consent, but the refusal of the court below to open such decree reviewed on appeal.

2. ATTORNEY AT LAW; *His authority. When consent decree will be set aside.*

   An attorney-at-law, acting under a general retainer, and without special authority, has no right to compromise his client's case, and consent to a judgment or decree against him. But the court will not set aside such decree merely for want of special authority from the client, to give such consent, it will examine whether from the facts and circumstances, the attorney might well have consented to it in the exercise of his general authority to stop litigation and expense. If it appear that he consented fraudulently, or by collusion with adverse counsel, or under a mistake, or misapprehension of law or facts, and his client was seriously prejudiced by it, the court will open the decree.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*Dooley*, for appellant.

*Watkins, contra.*

ENGLISH, CH. J.:

On the 24th of September, 1870, Louis Saleski filed a bill in the Chancery Court of Pulaski County, against Fleetwood H. Boyd, his co-tenant, for a portion of Lot No. 1, in Block No. 1, in the Town of Argenta, and for an account of expenditures, rents and profits, etc.

The bill alleged, in substance, that plaintiff and defendant purchased the lot on joint account, on the 16th day of August, 1866, and obtained a deed therefor. That there was upon the lot, at the time they purchased it, a large, two-story, unfinished building, etc. That of the purchase money, plaintiff advanced $391, also $90 to remove an incumbrance, and had paid $42.91 taxes upon the property, etc. That defendant had been in possession of the premises ever since they purchased the lot, and had taken the rents and profits, and had not accounted to the plaintiff for any portion thereof, etc.

Boyd filed an answer and cross-bill 12th May, 1871.

He admits that the lot, on which there was the frame of a two-story building, was purchased on joint account, by him and plaintiff, at the time stated in the bill, and that plaintiff advanced upon the property as alleged in the bill.

Avers that at the time they purchased the property, it was agreed that plaintiff and defendant should share equally in the expense of the purchase, and of the finishing of the building thereon, and in placing other improvements on the lot; and that they should be equal owners of the property; and that in pursuance of said agreement, defendant proceeded to finish the said

building, and to put other improvements on the lot at a great outlay of money, time, etc.

He avers that he paid $50 in part satisfaction of the same incumbrance (a mechanic's lien) on which plaintiff advanced $90.

For material, labor etc., to complete the unfinished building on the lot, $1219.

For material and building kitchen and store room, $200.

For material and building stable, fences and gates, $300.

For digging well, etc., $25.

For material and building house on corner of the premises, $400.

For taxes upon the property for 1868, $12.92.

For examination of title and drawing deed for the lot, $15.

Making the total sum claimed to have been expended upon the property by the defendant, $2221.92, while plaintiff claims to have expended before the filing of the bill, $523.91.

Defendant further alleges, that plaintiff was indebted to him as follows:

For board from April 7th to September 7th,
1867, at $30 per month.........................$150 00
Loaned money from time to time.................. 45 00
One pair of pants..................................... 4 00
Bar bill.............................................. 33 00

$232 00

Which sum he prays to be taken into account on final hearing and charged against plaintiff.

" Defendant admits that he resided in and used said property, and is willing to pay a reasonable rent therefor; and that he has rented, and does rent, the above mentioned house on the corner of the premises, and is willing to account for all receipts therefor."

Saleski vs. Boyd.

Prayer for an account between the parties, and that he have a lien upon the property for any balance found to be due him, and that it be sold, etc.

On the 18th March, 1872, plaintiff filed a demurrer to so much of defendant's answer, etc., as sought to charge him with board, money loaned, pants and bar bill, because the same could not be settled in a proceeding for partition, etc.; and the demurrer was sustained 13th of June, 1873.

On the 5th of February, 1872, upon motion of defendant, the cause was referred to D. P. Upham, then clerk and master of the court, to take and state an account between the parties.

On the 14th of March, 1872, the parties appeared before Upham, as master, and took the depositions of four witnesses by consent, and plaintiff filed with the master two receipts for taxes paid by him upon the property, after the commencement of the suit, one for $18.71. for the year 1870, and the other for $4.61, for the year 1871. Upham was removed from office before he made any report in this cause as master, and, it seems, placed the depositions, etc., taken before him among the papers of the case, and they have been copied into the transcript before us. They relate mainly to the defendant's possession of the premises in controversy, and the value of the rents, etc., and will be noticed again hereafter.

On the 11th February, 1875, the previous order referring the cause to Upham, as master, was revoked, and A. R. Witt having become clerk and master of the court, the cause was referred to him to take testimony, and state an account between the parties, and report at the next term.

On the 27th of March, 1875, the parties made an agreement that the depositions of defendant's witnesses might be taken on that day, and from day to day, at the Chancery Clerk's office,

and that plaintiff be allowed to take depositions, also, at the same time and place.

The master, accordingly, took the depositions of defendant and four witnesses. It does not appear that plaintiff produced any witnesses, or that he or his solicitors attended to cross-examine the defendant's witnesses. It may be stated, in general terms, that it appears from their depositions, that defendant commenced improving the premises in December, 1866; that he furnished labor and materials and completed the building that was on the lot (a frame) at the time the parties purchased it, and which was designed for a hotel, and contained about twenty-eight rooms; and that he put upon the lot the other improvements described in his answer, and that the charges made in his answer for expenditures upon the premises were reasonable.

The depositions also prove, that defendant was occupying the main building in April, 1867, when plaintiff commenced boarding with him, and continued to occupy, use, and take rents and profits of all the improvements on the lot, until they were destroyed by fire in April, 1869, and that he afterwards continued in possession of the lot to the time the depositions were taken.

Defendant also proved, that plaintiff was indebted to him for board, money, clothing, and bar bill, as charged in his answer.

The master did not inquire of the witnesses, as he should have done in the absence of the plaintiff and his solicitors, as to the value of the rents and profits of the premises.

On the 1st of July, 1875, one of the solicitors of the plaintiff (Mr. Farr) filed a motion to continue the cause. Stating that he had been too much engaged in court to attend to the examination of witnesses before the master, and that plaintiff wished to prove, by absent witnesses, the value of the rents and profits of the premises, of which defendant had been in possession for many years. The court continued the cause, and ordered the

master to make his report on the evidence then before him, and to be thereafter taken, before the next term.

On the 2d of December, 1875, the master, without taking any further depositions, made his report. He allowed the plaintiff all the charges claimed by him in the bill for moneys expended upon the property, adding thereto the sums named in the two tax receipts filed by him before Upham, as master, making total allowance to plaintiff of $547.23.

He allowed defendant all the sums claimed in his answer, to have been expended upon the property, amounting to $2221.92.

He made no account, he states, of defendant's private claim against plaintiff for board, etc.

He also stated, that defendant had never accounted to plaintiff for rents and profits, etc., but as there was no definite proof in the evidence adduced by the parties as to that matter, he was unable to make up any further account between them.

At the time the master's report was filed (December 2, 1875), on motion of plaintiff, the cause was, by order of the court, referred to the master for further proof as to the rents.

On the 14th of December, 1875, and before the master had made any further report, the following decree was entered:

"Come the parties, by their respective solicitors, and the master's report heretofore filed herein, is in all things approved and confirmed, and a fee of $25 allowed him and taxed as costs in this suit; and this cause was heard, and by consent the following decree is entered herein ; and it appearing to the court that plaintiff and defendant are joint owners of Lot No. 1, in Block No. 1, in the Town of Argenta, etc.; that they jointly purchased the same for the purpose of erecting a hotel thereon, and at the time of purchase agreed to put in an equal cash capital, in the purchase and improvement of said lot, and to bear equally all expenses of carrying on said business, and share equally in the

profits thereof; and it appearing that said plaintiff has advanced and expended the sum of $547.23, toward the purchase and improvement of said lot; and it further appearing to the court, that it is impracticable to divide the said lot, and that the same cannot be partitioned without manifest injury to both parties. It is therefore adjudged, ordered and decreed that said lot, together with all the buildings, appurtenances and improvements thereon, be sold at public auction, etc., by a commissioner, etc., and that said commissioner, after first paying the costs of this suit, and expenses of sale out of the proceeds of sale, shall pay the residue thereof to plaintiff and defendant as follows, to-wit: 547.28ths to plaintiff, and to defendant, 2221.28ths of said residue; and it is further adjudged, ordered and decreed, that if said property shall not sell for enough to reimburse both plaintiff and defendant to the full amount respectively advanced and expended by them in the purchase and improvement of said lot, defendant shall be first reimbursed to the extent of $1675.69, that being the excess expended by him over the amount expended by plaintiff, and the residue to be divided equally between them; and if said property shall sell for less than $1675.69, that the whole of the purchase money, less costs of suit, and expenses of sale, shall be paid to defendant, and that he also have and recover of plaintiff the difference between the sum of $1675.69, excess of amount expended by plaintiff in the purchase and improvement of said lot, and that he have execution therefor as soon as the specified amount can be judicially ascertained on the further hearing of this cause."

This decree, manifestly gave to defendant the lion's share. It visited upon plaintiff a larger portion of the loss of the joint adventure than upon defendant, if there should turn out to be a loss upon sale of the lot, left defendant to retain all of the rents of the premises, and at liberty to collect of plaintiff his bill of

$232.00, for board, loaned money, pants, etc., which has been ruled out upon demurrer.

Messrs. Farr & Fletcher, appear to have been the solicitors of the defendant, from the commencement of the suit down to the time of the entering of the decree.

On the 24th of January, 1876, and during the same term at which the decree was entered, the plaintiff, by Mr. Dooley, his solicitor, filed a motion to set aside the decree, supported by his own affidavit and the affidavit of another person.

From the motion and affidavits, it appears that plaintiff was sick in the country, at the time the decree was rendered, and had been sick and unable to attend to business from some time in the previous summer. That he had been prevented by sickness from appearing before the master to prove the value of the rents, etc. That defendant was in the possession and use of the main building on the lot, for about two years before it was burned down, and that the rent was of the value of $60 per month, etc. Plaintiff, in his motion and affidavit, claims to have furnished material and labor for the improvements upon the lot, which are not charged in his bill. He also refers to a contract between him and defendant, and to which defendant referred in his deposition before the master, but which is not alleged in the bill nor in the answer, and was properly disregarded by the master in making up his report. The principal, and only possible objection, made to the decree in the motion, is that defendant was not required to account for the rents of the property. There is a general allegation in the motion, that the decree was a fraud upon plaintiff's rights.

The chancellor overruled the motion, on the ground that it would be bad practice to set aside a decree entered by consent of the counsel in court, in the absence of any showing that counsel consenting to the decree acted with fraud or bad faith to

Saleski vs. Boyd.

the client. That "if the consent were a mere mistake in judgment, or an act of improvidence, being solemnly made in open court, the opposite party had a right to rely upon it, and the client should be bound. It becomes a matter then between attorney and client alone," etc.

The chancellor, after giving his reasons for overruling the motion to set aside the decree, added: " I observe in the decree a manifest misprision, which of my own account, I will correct for the benefit of the complainant, inasmuch as it is consistent with the consent, and with other parts of the decree to do so. If the sale of the property should fail to make good the whole of the excess of the expenditures made by defendant as detailed in the decree, he is only entitled to claim of the complainant half the deficiency instead of all as stated in the decree. To this correction the defendant consents as obviously proper, and in other respects the decree must stand."

The plaintiff filed an amended motion to set aside the decree, which was signed by Messrs. Farr & Fletcher, as well as Mr. Dooley, stating in substance :

That the decree recites, that it is based upon and in accordance with the report of the master of 2d December, 1875, on file in court, when in fact such report was not on file in court at the time the decree was entered.

That the report of the master of 2d December, had been referred back to him to take account of rents, etc.; and that he had not reported at the time the decree was entered, and that if he had taken testimony as to the rents and reported as directed, it would have shown a large balance in favor of plaintiff.

That neither plaintiff nor his counsel assented to the decree as entered. That there was no consent to a decree in accordance with the report of the master of 2d December.

That if plaintiff's attorney ever consented to a decree, it was under a misapprehension that a report of the master was on file in court, and that he was misled when he consented to the decree, if he assented to it at all, and did so consent with the full understanding and belief that the master's report was in court, other than the report of 2d December.

That the modified decree, as well as the orginal, does great injustice to the plaintiff. And he asks the court to set aside the decree, and if not, to strike from the entry so much as recites that it was entered by consent.

The court overruled the motion, to which ruling the plaintiff excepted, and took an appeal to this court.

No appeal, it seems, lies from a decree rendered by consent. *Webb* v. *Webb*, 3 Swanton, 658. *French* v. *Shotwell*, 5 John. Ch., 562. *Williams et al.* v. *Neil et al.*, 4 Heiskel, 280. *Musgrove* v. *Lusk*, 2 Cooper's Tenn. Ch., 580.

But the appeal in this case is not directly from the decree, but from the decision of the chancellor overruling the appellant's motion to set aside the decree, on the showing made by him, the motion having been made during the term at which the decree was entered, and while it was under the control of the chancellor.

An attorney·at-law acting under a general retainer, and without special authority, has no right to compromise his client's case, and consent to a judgment or decree against him. *Holker et al.* v. *Parker*, 7 Cranch, 452. *Mayor* v. *Foulkrod et al.*, 4 Wash. C. C., 511. *Davidson* v. *Rozier*, 23 Mo., 389. *Dodd* v. *Dodd*, 9 Barr., 315. *Nolan* v. *Jackson*, 16 Ill., 275. *Lockhart* v. *Wyatt*, 10 Ala., 235. *Smith* v. *Bossard*, 2d McCord Ch., 409. *Denton* v. *Noyes*, 6 Johnson, 295. 5 Randolph, 645. *Miller* v. *Edmonston*, 8 Blackf., 291.

But the court will not set aside a decree entered by consent of an attorney, merely because he had no special authority from

his client to compromise the case and give such consent; but will look into the facts and circumstances of the case and ascertain whether it be such a decree as the attorney might well have consented to in the exercise of his general authority, to prevent further litigation and expense. If it appear that the attorney consented to the decree in fraud, or by collusion with adverse counsel, or under a mistake or misapprehension of law or facts, and that the rights and interests of his client were thereby seriously compromitted, the court will open the decree.

In *Holker* v. *Parker*, 7 Cranch, 452; Chief Justice Marshall said : "Although an attorney-at-law, merely as such, has, strictly speaking, no right to make a compromise, yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there can be no hesitation in saying that the compromise, being unauthorized and being therefore in itself void, ought not to bind the injured party. Though it may assume the form of an award or judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it."

In *Decarters* v. *LaFarge*, 1 Paige, 574; after the complainant's counsel had opened the argument upon the hearing, the counsel for defendants declined to reply, stating that two points had been taken which he deemed to be so decidedly against the defendants, that in his opinion their defense could not be sustained, and a decree was therefore entered in favor of the complainants.

A motion for rehearing was made, on the grounds that the proofs of defendants had not been read at length, and that the cause had not been argued on their part, etc.

Saleski vs. Boyd.

The chancellor refused the re-hearing, there being no showing of merits in the defense; remarking, among other things, that "to obtain a re-hearing in such case the defendants should show a violation of equity on the part of their counsel, or that he had acted under a clear mistake, either as to the law or facts."

In *Pike* v. *Emerson*, 5 New Hampshire, 393, pending the cause in the Court of Common Pleas, the attorney for the plaintiff signed an agreement that the judgment of the court, if against the plaintiff, should be final and conclusive, waiving his right of appeal. The cause was tried afterwards, and verdict and judgment against plaintiff, and without moving to set the judgment aside, or impeaching the agreement made by his counsel, he appealed. On motion the Supreme Court dismissed the appeal. The court said: "The court has the power, without doubt, in case of fraud or mistake, to relieve a party from the effects of such an agreement. But while an agreement like that made by these parties in the court below, remains unimpeached, we are of the opinion that no appeal can be prosecuted."

In *Denton* v. *Noyes*, 6 Johnson, 295, an attorney appeared for defendant, who had not been served with process, and, without authority, confessed judgment. The court refused, on motion, to set aside the judgment, but suspended its execution, and gave the defendant time to plead matters in bar, and have a trial on its merits, and ordered a rule against the attorney to show cause why an attachment should not be issued against him, etc.

In *Harvey et al.* v. *Thorpe*, 28 Ala., 261, the court said, that where an admission is improvidently, or by mistake, made by an attorney, the court, by means of its coercive powers over its own officers, has authority to relieve against the consequences of the admission; regulating its action in this respect with a just regard to the rights of both parties, which it can do by setting aside

the agreement upon terms which will meet the justice of the particular case.

We have carefully looked into the facts and circumstances of this case as they appear in the pleadings and depositions, and motions, and accompanying affidavits, to set aside the decree, and are of the opinion that if the counsel for appellant consented to the decree, which it seems from the record entry they did, they must have acted under a grave mistake or misapprehension of the law or facts of the case, in abandoning the claim of their client to have the appellee account for the rents of the premises, and that the chancellor, in addition to the correction of the decree ordered by him, should have opened it to the extent of permitting an account of the rents to be taken.

Without deciding whether the depositions taken before Upham, while he was acting as master, by consent of the parties, and upon cross-examination, could have been treated as evidence in the cause, we have looked at them, as well as the depositions taken before the second master, for the purpose of forming some estimate of the value of the rents. The depositions conduce to prove, that beside the value of the rents of other buildings on the lot, the hotel building was of the monthly rental value of $60, during the two years in which it was occupied by appellee before its destruction by fire.

We think it would have been the better practice for the chancellor to have stayed the execution of the decree, and opened it to the extent of letting in an account of the rents, while it was in *fieri* and under his control, than to overrule the motion on the ground that there was no showing that appellant's counsel had acted in fraud or bad faith, and leaving him to his remedy against them.

The decision of the chancellor upon the motion must be reversed, and the cause remanded with instructions to the court

below to open the decree for the purpose of causing an account of the rents of the premises to be taken, and upon ascertaining the value of the rents, to make such modification of the decree as may appear to be equitable between the parties.