### DUKE *v.* STATE.

#### Opinion delivered October 22, 1892.

1. *Mortgage—Adverse possession.*

    Possession of mortgaged premises under claim of ownership will not be adverse to the mortgagee where the claim was made with knowledge of the mortgage, and where the claimants never in terms repudiated it.

2. *Adverse possession—Case stated.*

    In a suit by the State to foreclose a Real Estate Bank mortgage, brought under the act of 1861, which requires that money due thereon should be paid "directly into the State treasury," where parties in possession of the land, to procure the dismissal of a prior suit brought for the same purpose, had paid to the

Attorney General a sum less than the amount due under the mortgage, knowing that he had no authority to receive any money or to make any settlement, their subsequent possession of the land under claim of ownership did not, by reason of such payment and the dismissal of the prior suit without prejudice, become adverse to the State, since there is no presumption that the State had notice of the unauthorized payment.

3.   *Limitation—Five years statute.*

A proceeding to enforce a lien created by mortgage is not within the statute imposing a limitation of five years for the recovery of lands sold at judicial sale (Mansf. Dig. sec. 4474).

4.   *Statutes of limitation construed prospectively.*

Under the act of March 31, 1887, which provides that suits to foreclose mortgages shall be barred when the debts secured are barred, the period of limitation as to causes of action existing when the act was passed should be computed from the time they were first subjected to its operation.

5.   *Laches—Who may not complain.*

A defendant cannot complain of the laches of a public officer in bringing a suit on behalf of the State where the delay is in part attributable to the defendant's wrongful act in procuring a dismissal of a prior suit, and where no prejudice to defendant's rights is shown.

6.   *Payment—Presumption from lapse of time.*

The presumption, after lapse of twenty years, that a mortgage debt has been paid, does not arise if within that period the debtor has recognized the debt by a payment, and there are circumstances that explain the delay in prosecuting the claim.

7.   *Real Estate Bank—Constructive notice.*

The act of January 16, 1861, which provides for the foreclosure of Real Estate Bank mortgages upon constructive notice, is constitutional.

*McCreary* v. *State,* 27 Ark. 425, followed.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

*W. S. McCain* for appellants.

1.   The statute of limitation began to run upon the death of the mortgagor and entry of the heirs.   34 Ark. 312; Buswell on Lim. note 2, sec. 311; Angell on Lim. sec. 452.

2.   While no statute bars the sovereign, yet where the State takes part in a private enterprise not strictly governmental, and becomes involved in litigation, the same limitation applies as to individuals.   45 Ark. 81; 13 Am. & Eng. Enc. Law, 711; 12 Johns. 242.

3.   The claim is stale.   After the lapse of twenty years, payment is presumed.   23 Wall. 127; 5 Johns. Ch. 545; 9 Wheat. 516; 2 Washb. Real Prop. 169; Jones, Mortg. sec. 915.

4.   Limitation began to run from the date of the administrator's sale in 1868, and the suit was barred after five years, the limitation on judicial sales.

5.   It certainly began to run when the first suit was dismissed in 1872.

6.   The suit is barred by the act of March 31, 1887.

7.   This suit was commenced as to the Wells heirs December 15, 1883, and as to the Carltons and Mabel Wells February 6, 1890, more than seven years after the bill was filed.   Filing a bill is not the commencement of a suit.   Mansf. Dig. sec. 4967.

8.   This was a proceeding *in rem,* and there must have been an actual seizure or personal service to constitute due process of law.   4 Pet. 466; 112 U. S. 294; Waples, Pro. in Rem, secs. 64, 65, 68, 611; 10 Wall. 319; 95 U. S. 715.

9.   The State was charged with knowledge of the settlement with its Attorney General.   Mechem on Agency, secs. 718-723; Mechem on Pub. Off. secs. 844-846; 2 Spelling on Corp. 753; Whart. on Ag. secs. 177, 184; Wade on Notice, secs. 672, 692; 29 Ark. 99; 39 Ark. 50.

10.   The presumption is that an attorney has paid over money collected for his clients.   1 Gr. Ev. sec. 78; 25 Ark. 312; 11 *id.* 227; 12 Weaton, 70; Wood on Ev. sec. 76; 31 Ark. 609.

*W. E. Atkinson*, Attorney General, and *Chas. T. Coleman* for appellee.

1. This suit is not barred by the presumption of payment arising from a lapse of twenty years. Twenty years have not elapsed since the first suit was dismissed.

2. It is not barred by limitation. No *adverse* holding is shown. 18 N. H. 247; 23 Wall. 119; 8 Met. (Mass.) 90; 43 Ark. 469; *ib.* 521; 10 Yerg. (Tenn.) 380; 7 How. 258.

3. It is not barred by the act of March 31, 1887. This suit was not barred prior to the act, and the act is void as to pre-existing debts. 102 U. S. 206; 1 How. 311; 2 How. 612; 40 Ark. 423.

4. Service by publication under the act of January 16, 1861, is constitutional. 4 Peters, 466; 48 N. W. Rep. 773; 134 U. S. 322; 18 How. 140; 18 N. Y. 216.

5. The Attorney General had no authority to compromise the claim of the State, and there is no evidence that he attempted it. If he did, it was the unauthorized act of a public agent, and void. Story, Ag. sec. 307*a;* 25 Ark. 266; 44 Ark. 437; 47 *id.* 209; 66 Ga. 403; 24 Minn. 332; 26 *id.* 1; Nott & Hunt. 144; 8 Paige, Ch. 527; 2 Hill (N. Y.), 159. In view of these authorities, the State was not charged with knowledge of the settlement made, nor bound by it, nor estopped thereby.

6. There is no presumption that the Attorney General imparted notice by payment.

MANSFIELD, J. This was a proceeding prosecuted by the State under the act of January 16, 1861, to foreclose a mortgage executed to the Real Estate Bank by Stephen Gaster in the year 1837. The mortgage conveyed certain lands then owned by Gaster, and it was given to secure the payment of his bond to the bank for the sum of $30,000. The debt did not mature until 1861, and the mortgage expressly provided that the lands should remain in the possession of Gaster until they

should be " legally sold " to satisfy it. He continued to
occupy the lands, until his death, which occurred in the
year 1858 or 1859. His heirs then took possession of the
property and held it until 1866, when it passed into the
hands of his administrator, who was appointed in that
year. The administrator continued in possession until
the year 1868, when he sold the lands, under an order of
the probate court, for the payment of Gaster's debts.
The sale was confirmed, and the purchasers under whom
the appellants claim took possession under the adminis-
trator's deed. For convenience, some of the appellants
are designated in the abstract of the record as " the
Carltons ; " and all the others, with the exception of
Mabel Wells, are referred to as the " Wells heirs."

It appears that a bill to foreclose the mortgage was
filed in 1867. To this Gaster's administrator filed a
demurrer, and the record shows that it was dismissed
without prejudice, on motion of the Attorney General, in
1872. The bill in the present suit was filed in 1876. In
accordance with the provisions of the act under which it
was brought, it was exhibited against the lands embraced
in the mortgage, and not against any claimant of the land
or other person. But in 1883 the Wells heirs appeared,
and filed an answer to the bill and a cross-complaint
against the Carltons. The answer pleaded accord and
satisfaction, averring that in 1872 their ancestor, D. S.
Wells, and the persons under whom the Carltons claim,
paid the Attorney General $2000, which he accepted in
full satisfaction of the mortgage debt. The cross-bill,
after stating that partition of the lands had been made
between the heirs of D. S. Wells and the Carltons, prayed
that whatever should be found due on the mortgage, if
anything, might be apportioned to the lands of the sev-
eral claimants, so that each owner might bear a proper
proportion of the whole sum adjudged against all the
lands. On the 14th day of May, 1890, the Wells heirs

filed an additional answer in which they plead, in bar of the suit, seven years adverse possession of the lands, and demur to the complaint, stating, among other grounds of objection to it, that the claim of the State is stale and barred by limitation. A few weeks later the record shows that they requested the court to permit them to withdraw their previous offer to submit to judgment. But it does not appear whether the court took any action upon this request.

The fourth section of the act of 1861 provides that when the bill to foreclose is filed the clerk shall make an entry in his record, stating the general objects of the bill, and "what lands it proposes to subject to foreclosure, and under what mortgage;" and that a copy of such entry, attested by the clerk and duly published in the manner required by the act, "shall be taken as notice, to the mortgagor and to all persons claiming under him and to all occupants of the lands, of the beginning and pendency of the suit." The same section provides for the publication of such record entry by "four successive weekly insertions in a newspaper published at Little Rock." This order was not made until 1890. It was published on the 6th of February in that year, and, under the provisions of the statute, its publication was the commencement of the suit as against so much of the lands as was held by the Carltons and Mabel Wells, neither of whom had previously entered an appearance.

In 1890, after the publication of the order, the Carltons filed an answer, claiming the lands held by them under the probate sale and pleading the statutes of limitation of five and seven years. They also pleaded the staleness of the demand, and demurred to the complaint. On the 14th of May, 1890, Robertson, the guardian of Mabel Wells, who was then a minor, filed a motion to quash the service by publication on the ground that it was not due process of law, and that the provision of the

statute authorizing it violates amendments 5 and 14 of the Constitution of the United States. No action was taken upon this motion or upon the demurrer until the cause was finally heard, when they were overruled. The finding of the chancellor was general and to the effect that the suit was not barred by the statute of limitations nor by the staleness of the demand. A decree was accordingly entered foreclosing the mortgage and condemning the lands to sale, and from that judgment this appeal is prosecuted.

The appellants do not question the State's right to foreclose the stock mortgages given to the Real Estate Bank. And it is not controverted by the appellee that in actions brought for that purpose the attitude of the State is such that her suit may be barred by the statute of limitations. *Calloway* v. *Cossart*, 45 Ark. 81.

As no point is made against the sufficiency of the facts stated in the complaint to constitute, originally, a cause of action, and the other questions raised by demurrer are also presented by answer, it is unnecessary to rule specially or separately upon the action of the court in overruling the demurrer.

The facts on which the chancellor acted, so far as they do not appear in the pleadings, are to be ascertained from the deposition of W. T. Wells, introduced by the appellants, and from an agreed statement of the parties. In addition to some of the facts already stated, Wells testified that Gaster cultivated the lands embraced in the mortgage continuously for more than fifteen years before his death, and that since the spring of 1865 they have been occupied and cultivated without interruption by Gaster's heirs and administrator and the persons claiming under them ; and that such persons have all claimed to own the lands in fee simple under the administrator's conveyance ; that about 1871 or 1872 the Carltons and Wells " made some settlement of the mortgage

sued on, and procured a suit then pending for foreclosure * * * to be dismissed;" and that "after that time the claimants and occupants of the lands always considered the matter as settled" until this suit was brought. It was admitted that the claim of the occupants to own the lands, as mentioned by Wells, was made with a knowledge that the mortgage had been given and never foreclosed; and that the claimants "had never in terms acknowledged or repudiated" the mortgage. It was also admitted that the "settlement" mentioned by Wells was a dismissal of the suit first brought to foreclose the mortgage, and that it "was procured by paying to the person then occupying the office of Attorney General a certain sum of money, said to be $1200," and that "the parties holding possession of the lands knew that the Attorney General did not have authority to accept this as a settlement of the mortgage." It is conceded that the payment referred to was not an accord and satisfaction; and it is relied upon only as a matter of evidence tending to show that, at the time it was made, the possession of the appellants became adverse to the mortgage, if it had not been so before.

1. When possession of mortgagor not adverse.

1. In the case of *Whittington* v. *Flint*, 43 Ark. 504, it was held that the "possession of the mortgagor, or his privies, including his grantees with notice, will not be adverse, nor bar an action by the mortgagee for foreclosure, or for possession of the land, unless there has been an open and explicit disavowal and disclaimer of holding under the mortgagee's title, and assertion of title in the holder brought home to the mortgagee." To the same effect is the decision of the court in *Ringo* v. *Woodruff*, reported in the same volume (43 Ark. 469.) In the latter case it was held that "to constitute adverse possession against a mortgagee it is not sufficient that the mortgagor, or those holding under him, occupy, use, improve and pay taxes on the premises, as their own

absolute property; but the possession must be in open denial of the mortgagee's title, and accompanied with such acts or declarations of the holders as are sufficient to put the mortgagee on notice that they claim and hold in hostility to his rights."

It is plain that the facts on which the defense of limitation by adverse possession is based in this case are of no greater weight or significance than those held insufficient to establish an adverse holding in the cases cited above. The continued possession of Gaster was in the exercise of a right which he had by the express terms of the mortgage, and it is not claimed that the statute of limitations was ever put in motion during his lifetime. The purchasers at the probate sale bought with notice of the mortgage incumbrance, and therefore acquired only the equity of redemption. The possession which they took of the property was entirely consistent with the mortgagee's rights, and they and their vendees, including these appellants, are presumed to have held in subordination to the mortgage, in the absence of some "overt act of hostility" to it of which the mortgagee had notice. *Ringo* v. *Woodruff*, 43 Ark. *supra; Whittington* v. *Flint*, 43 Ark. *supra.* The transaction with the Attorney General was not such an act, nor can the State be charged with notice of it. The dismissal of the first suit was not in fact the act of those claiming the lands. So far as it was the act of any person, it was the action of the Attorney General; and on the face of the record it indicates no abandonment of the State's right on the one hand nor any disclaimer of holding subject to it on the other. If, however, the dismissal was for the purpose alleged here, it is admitted that the Attorney General acted without authority, and that the persons then claiming the lands knew that he did so. Under such circumstances, a knowledge of what was done cannot be imputed to the State on the ground that he was its attorney

2. Proof held not to establish adverse possession.

and agent. Mechem's Public Officers, secs. 844, 846; *Parsel* v. *Barnes*, 25 Ark. 261; Mechem on Agency, sec. 718; *Dorsey County* v. *Whitehead*, 47 Ark. 205; *Barton* v. *Swepston*, 44 Ark. 437; *Saleski* v. *Boyd*, 32 Ark. 74.

But it is contended that the law will presume that the Attorney General paid to the State the sum received from the appellants, and that he thus imparted notice of the settlement he had made. The act of 1861 expressly provides that money collected on the bank mortgages shall be paid "directly into the State-treasury." And if the money had been tendered as only a partial payment, the Attorney General was without authority, under that act or any other, to receive it. He had no official duty to perform with reference to the money, and the law entertains no presumption as to the disposition he made of it. As the State, so far as the proof shows, was without notice of the payment to him, the mere fact that the claimants or occupants of the lands thereafter regarded the mortgage as settled did not in legal contemplation change their attitude towards it.

**3. Construction of five years statute of limitation.** 2. As to the plea of the five years statute of limitations, it is necessary only to say that that statute has been held to apply only to actions brought for the recovery of lands and to causes of action accruing within the period of limitation which it fixes. *Phelps* v. *Jackson*, 31 Ark. 272; *Kessinger* v. *Wilson*, 53 Ark. 400. This proceeding is to enforce the lien created by the mortgage, and not to recover possession of the lands it embraces—no right to such possession having ever accrued to the plaintiff, under a provision of the mortgage already mentioned.

**4. Statutes of limitation construed prospectively.** 3. But it is further contended that if this suit was not barred under any other statute, it was barred by the act of March 31, 1887, which provides "that, in suits to foreclose or enforce mortgages or deeds of trust, it shall be a sufficient defense that they have not been brought

within the period of limitation prescribed by law for a suit on the debt or liability for the securities of which they were given." The act is made to take effect from the date of its passage, and does not expressly repeal any other statute. The contention of appellants is that it applied to all causes of action existing at the time it was passed, and that, as to debts not due the State, it is void, under a prohibition of the Federal Constitution, as impairing the obligation of contracts. Const. U. S. art. 1, sec. 10. But as the legislature may enact laws impairing obligations to the State, it is argued that the act of 1887 barred all suits to enforce mortgage liens in favor of the State where the debt secured was barred at the time of suing. As an action on the bond secured by this mortgage was barred before the suit was begun, the appellants' construction would make the act extinguish the State's lien the day it took effect. And if this result was contemplated as to mortgages to the State, it was intended as to all others; for it is clear that the act makes no discrimination in favor of the citizen.

Mr. Cooley says: "It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Cooley's Const. Lim. 455. He also says that "a conflict between the statute and the constitution is not to be implied," and that "where the meaning of the constitution is clear * * * *the court, if possible, must give the statute such a construction as will enable it to have effect.* This is only saying * * * that the court must construe the statute in accordance with the legislative intent; since it is always to be presumed the legislature designed the statute to take effect, and not to be a nullity." *Ib.* 218.

A literal interpretation of the act of 1887 would make it bar at once all proceedings for the foreclosure of

mortgages where, as in this case, the debt secured had matured at such time before the passage of the act that an action to recover them would be barred. On the principle of the rule we have quoted, it is our duty to presume that no such effect was intended by the legis- lature. Endlich, Stat. sec. 295; *Sohn* v. *Waterson*, 17 Wall. 596, 599.

But in the case just cited Judge Bradley said : " A statute of limitations may undoubtedly have effect upon actions which have already accrued as well as upon actions which accrue after its passage." And it was there held that, in the absence of a contrary provision, the period of limitation fixed by the statute would be computed as to causes of action existing when it was passed, from the time when they are first subjected to its operation. This we understand to be the view expressed by Judge Pike in *Trapnall* v. *Burton*, 24 Ark. 371, where it was declared to be the settled doctrine of this court " that when a new statute of limitations is enacted, it will be taken to be prospective in its opera- tion and to apply, not to causes of action which had accrued at its passage, but to those accruing thereafter, in the absence of language in the statute compelling a contrary construction." It was held, however, in that case that all causes of action existing at the time of the passage of the act of January 4, 1851, reducing the period of limitation in actions to recover lands from ten years to seven, would be barred at the end of seven years from the date of that act unless they were barred sooner under the old law ; but that the act of 1851 could not be pleaded in any case until January 4, 1858. If a similar construction be given to the act of 1887, it is obvious that it affords no defense available to the appellants. We think it applies to all mortgages not barred previous to the date of its passage, except such as would be barred at once under its operation. But no mortgage to which

it applies would be barred in a shorter time after its passage than the period of limitation prescribed for the debt secured, unless barred sooner by adverse possession. The act would not bar this suit, in any view we are able to take of it. And we do not decide what effect, if any, it had on the rule of limitation previously applicable to foreclosure proceedings.

4. It is also insisted that the State's right of fore- 5. Who closure is barred by laches, and that a court of equity plain of should refuse to enforce the mortgage because of the laches. staleness of the demand. Laches is such neglect or delay on the part of the person asserting a claim as makes it inequitable, under the circumstances of the case, to grant the relief he seeks. *Galliher* v. *Cadwell*, 12 Sup. Ct. Rep. 873; *Gibson* v. *Herriott*, 55 Ark. 85; *Glenn* v. *Hebb*, 17 Md. 260. And it was said in *Gibson* v. *Herriott*, *supra*, that whether the time the negligence has continued is sufficient " to make it effectual as a bar, is a question to be resolved by the sound discretion of the court." As shown by the statement of the case, the lien of the plaintiff was asserted as early as 1867 by a bill to which the administrator of Gaster filed a demurrer in 1868. Although the notice required by the statute was not given prior to 1872, the presumption is that the suit would have proceeded regularly to decree and without unnecessary delay but for its dismissal, procured in the manner stated above. To that dismissal the neglect of the proper officer to bring this suit at an earlier day may, in part at least, be attributed. And of this the appellants are in no attitude to complain. *Callender* v. *Colegrove*, 17 Conn. 1; *Gunton* v. *Carroll*, 101 U. S. 426; *Loring* v. *Palmer*, 118 U. S. 321; *Lyon* v. *Lyon*, 8 Ired. Eq. 201. It does not appear that they have been prejudiced by the delay thus caused, nor by that due to any other cause. And, in the absence of any prejudice to their rights, we think the State is not barred by the mere lapse of time.

*Galliher* v. *Cadwell*, 12 Sup. Ct. Rep. 873 ; *Callender* v. *Colegrove*, 17 Conn. 1.

6. When presumption from lapse of 20 years rebutted.

But it is urged that there has been a lapse of twenty years without any recognition of the mortgage debt; and that the law therefore presumes it to have been paid. We think the payment made to the Attorney General was a very distinct recognition of the debt, and its force is not broken by the fact that it was made to obtain a settlement which the parties knew the Attorney General was without authority to make and could not therefore make, consistently with a performance of his official duty. This suit was brought, as to all the appellants, within twenty years from the time of the payment referred to. And the case is not without circumstances explanatory of the delay which occurred in the prosecution of the claim. 2 Whart. Ev. sec. 1361; 2 Greenl. Ev. secs. 527. 528; 1 Jones, Mort. sec. 915.

7. Act for foreclosure of real estate bank mortgages valid.

5. The only point remaining for consideration is made upon the motion of Mabel Wells' guardian, and this is that the court acquired no jurisdiction to condemn the lands to sale for the reason that the statute makes no provision for either a seizure of the lands or a personal service of process. The suit was brought and prosecuted in the manner provided for by the act of 1861. The constitutionality of that statute was questioned, generally, in *McCreary* v. *State,* 27 Ark. 425, and it was there held to be a valid enactment. The proceeding it authorizes is *in rem,* and the jurisdiction exercised under it, and the process by which that jurisdiction is acquired, have been upheld so often by this court in similar cases that it is sufficient now to cite the decisions in which they have been sustained. *St. Louis &c. Ry.* v. *State,* 47 Ark. 323 ; *Williams* v. *Ewing,* 31 Ark. 229 ; *Williamson* v. *Mimms,* 49 Ark. 336 ; *McCarter* v. *Neil,* 50 Ark. 188 ; *Doyle* v. *Martin,* 55 Ark. 37 ; *Gregory* v. *Bartlett,* 55 Ark. 33 ; *Scott* v. *Pleasants,* 21 Ark. 364 ; *McLaugh-*

*lin* v. *McCrory*, 55 Ark. 442; *Worthen* v. *Ratcliffe*, 42 Ark. 330. See also *Parker* v. *Overman*, 18 How. 137; *Pennoyer* v. *Neff*, 95 U. S. 737; *Boswell's Lessee* v. *Otis*, 9 How. 348.

Finding no error in the decree, it is affirmed.