AMERICAN BUILDING & LOAN ASSOCIATION *v.* MEMPHIS FURNITURE MANUFACTURING COMPANY.

Opinion delivered May 9, 1932.

*Robinson, House & Moses* and *W. R. Roddy,* for appellant.

*Wilson, Kyser, Armstrong & Allen,* for appellee.

SMITH, J. Appellant, a building and loan association, hereinafter referred to as the association, filed a motion to vacate a decree of the Poinsett Chancery Court and to set aside an order approving a sale which had been made pursuant thereto, and from a decree of the court sustaining a demurrer to this motion is this appeal.

From this motion and the exhibits thereto the following allegations appear: H. W. Cole and S. W. Cole had been engaged in business at Marked Tree. Their business house was destroyed, and they made application to the appellant association for a loan of $10,000 with which to rebuild. The application therefor recited that the old building had been, and the new building—which

was to be brick—would be, located on lots 4 and 5, block 2, St. Francis Addition to the town of Marked Tree, and they agreed in the application to execute a deed of trust which would be a first lien on the land and the building then under construction, but not completed. The loan was made and the deed of trust was executed, which described the property as lots 4 and 5, block 2. This instrument was filed for record July 16, 1926, and was duly recorded.

At the time this loan was made the Coles were largely indebted to appellee, the Memphis Furniture Manufacturing Company, hereinafter referred to as the furniture company, and on July 27, 1926, before the completion of the building, they executed a mortgage to appellee furniture company to secure this indebtedness. The land described in this instrument was referred to as tract No. 1 and as tract No. 2. Tract No. 1 consisted of farming lands. Tract No. 2 covered property in the town of Marked Tree and was described by metes and bounds. The description employed included lots 4 and 5, block 2, and other lots in the same block. The mortgage to the furniture company contained the following recital: "That tract 2 is for the purpose of securing an indebtedness of $20,000 to the Memphis Furniture & Manufacturing Company, as evidenced by a promissory note of even date, due on the 27th day of July, 1927, with interest at the rate of 8 per cent. per annum from date until paid. That this mortgage on tract 2, however, is subject and second to a prior mortgage given the Arkansas Building & Loan Association for $10,000."

On August 25, 1930, a suit was filed by the furniture company in the Poinsett Chancery Court to foreclose its mortgage, and the association was made a party thereto. The complaint contained the following allegation: "Plaintiff avers that the real estate hereinabove described, as it is informed, is incumbered by indebtedness owing to the defendant, American Building & Loan Association, which may be secured by a lien superior to the lien of the mortgage first hereinabove mentioned, but plaintiff does not admit that such is true, and calls for

strict proof with respect to the claim of said American Building & Loan Association and the priority of its lien.''

The association filed an answer, alleging its prior lien on lots 4 and 5, block 2. When the answer was filed, it was conceded by the attorney for the furniture company that the lien of the association was prior and superior, and the attorney for the association agreed that a decree of foreclosure of plaintiff's mortgage might be entered, provided the rights of the association were protected. The decree was entered on May 4, 1931, which declared the priority of the lien of the association on lots 4 and 5, block 2, and this decree was approved by the respective attorneys before its entry.

Pursuant to this decree, a sale was had by the commissioner appointed for that purpose, at which sale the furniture company purchased lot 6, block 2, for $4,000. This was one of the lots embraced in the description employed in the mortgage to the furniture company. The report of this sale was approved, and the sale confirmed in vacation, that order reciting that it was done by consent of parties. The attorney for the Coles approved this order, but the attorney for the association was not advised of it, and entered into no agreement concerning it.

Before the final adjournment of the term of court at which the decree of sale had been rendered and the report of sale thereunder had been confirmed, to-wit, about July 1, 1931, the association discovered that the building which it had furnished the money to erect had, by mutual mistake of the parties as to the location and boundary lines of lots 4 and 5, block 2, been erected almost entirely on lot 6, block 2, and that only a small portion of the building was located on lot 5, block 2, and that the remainder of lot 5 and all of lot 4 were vacant except for a very small frame building.

The complaint alleged that the full amount of the loan was used in the construction of the brick building, and that it was the intention of all the parties to the deed of trust to the association that this instrument should cover the brick building and the land on which it had been

erected. It was further alleged that "at the time the Memphis Furniture Manufacturing Company took its mortgage, it had knowledge of the first mortgage for the sum of $10,000 covering the brick building, and it was not the intention of the parties executing its mortgage, nor were the agents and employees of the Memphis Furniture Manufacturing Company under the impression at the time, that its mortgage was a first lien on any of the land conveyed by it."

It was further alleged that, at the time of filing its answer, the association was ignorant of the true location of the brick building and believed that it was located on lots 4 and 5, and its agreement for the entry of the decree of foreclosure was induced by this misapprehension, and information to the contrary was not obtained until after the confirmation of the report of sale.

The motion to vacate the decree of sale and the order of confirmation was filed August 15, 1931, and, by way of cross-complaint against the original plaintiff and the defendant, Coles, it was prayed that the deed of trust to the association be reformed to comply with the intention of the parties so as to cover lot 6, block 2, the land on which the brick building was erected.

A demurrer to the motion was heard and sustained on August 28, 1931, an adjourned day of the same term of court at which the original decree of foreclosure had been rendered.

G. O. Campbell was made a party to the original foreclosure proceeding, and filed an answer, in which he alleged that the Coles had previously executed to him a mortgage on lots 2 and 7, block 2, in St. Francis Addition, and that he had acquired the title to these two lots by the foreclosure of his mortgage, which proceeding antedated the execution of the mortgage to plaintiff. Campbell's answer further alleged: "That in executing said mortgage it was the purpose and intention of the grantors and grantees therein that said mortgage should describe and convey lots 3, 4, 5 and 6, in said St. Francis Addition to Marked Tree; that in fact said mortgage extends to

and includes a part of one street in front of the buildings on said real estate and a part of the right-of-way of St. Louis-San Francisco Railway Company, a part of lot 7, owned by this defendant, and a part of Broadway Street, in Marked Tree; that the description as written in said mortgage to plaintiff is erroneous; was by mutual mistake of the grantors and grantee therein, and should be corrected and reformed. A correct plat of said real estate is hereto attached as Exhibit A and made a part hereof, and showing the location of lots 1 to 7, inclusive, and also showing by metes and bounds the description of real estate described in said mortgage executed to the plaintiff.''

The court, in the foreclosure decree, found the facts to be as alleged by Campbell, and that it was not the intention of the Coles to include any part of lots 2 and 7, block 2, in their mortgage to the furniture company.

For the affirmance of the decree from which this appeal comes, it is insisted that the decree was entered by the consent of all parties, and that, if any mistake exists as to the true location of the brick building, it should have been discovered when Campbell filed his answer praying reformation of the description employed in the mortgage from the Coles to the furniture company.

It is said that, in sustaining the demurrer, the chancellor announced that he was doing so and denying the relief prayed because it had not been asked in time, and for that reason only.

It thus appears that, while the furniture company mortgage has been foreclosed, and a sale thereunder had, there are no intervening rights of third parties. The furniture company became the purchaser at the sale, and it now claims as owner, and not as mortgagee, and it is very definitely alleged that the furniture company took its mortgage, through which its title was acquired to this property, with knowledge of the prior incumbrance in favor of appellant, which was duly of record.

The power of the chancery court to reform instruments where, through mutual mistake, they do not ex-

press the agreement of the parties, has been often exercised, and is not here questioned. The essence of the furniture company's insistence is that the request comes too late, especially as the decree under which it claims was entered by consent.

Properly considered, the decree was not entered by consent; we think under the facts alleged the consent went only to its form. In any event, such consent as was given was the result of mutual mistake. Under the allegations of the motion, the furniture company took its mortgage with knowledge of the fact that the association had a deed of trust in the sum of $10,000 covering the brick building, and this instrument was of record when the furniture company's mortgage was executed. There is nothing in the pleadings to indicate that the furniture company knew the exact location of the brick building and withheld that information from the association while obtaining its consent to the entry of the decree which would destroy its lien. But, if so, the association would be entitled to the relief prayed under the allegations of the petition. It is to be remembered that the motion was filed at the same term of court at which the decree was rendered, and the rights of no third parties have intervened. It is settled law that courts have control over their orders, judgments and decrees during the term at which they were made, and for sufficient cause may, upon application or upon its own motion, modify or set them aside. *Underwood* v. *Sledge,* 27 Ark. 296; *Democrat Ptg. & Litho. Co.* v. *Van Buren County,* 184 Ark. 974, 43 S. W. (2d) 1075.

The case of *Saleski* v. *Boyd,* 32 Ark. 74, was one in which an appeal had been prosecuted, as the instant case, from the refusal of the chancellor to set aside a decree, a motion to that effect having been made during the term at which the decree was entered, and while it was under the control of the chancellor. In reversing the action of the chancellor, it was there said: "If it appear that the attorney consented to the decree in fraud, or by collu-

sion with adverse counsel, or under a mistake or misapprehension of law or facts, and that the rights and interests of his client were thereby seriously compromitted, the court will open the decree.''

There was no avoidable delay on the part of the association in filing its motion, and it is alleged that this was done as soon as the association was advised of the facts.

It is insisted for the affirmance of the decree that the answer of Campbell, hereinabove referred to, should have apprised the association of the mistake before the rendition of the decree. But we do not think so. It was not, and is not, denied that the furniture company had a valid mortgage on lots 3, 4, 5 and 6, and the effect of Campbell's answer was to call attention to the fact that the description by metes and bounds which had been employed not only covered these four lots, but lots 2 and 7 also and a part of a street and of a railroad right-of-way, and that the Coles had lost their title to lots 2 and 7 through the prior foreclosure proceeding. It does not appear that there was anything about the plat which Campbell filed which would have shown the location of the brick building, and Campbell was not at all concerned or interested in this building and prayed no relief having any relation to it. The relief sought and obtained by him was to have his lots 2 and 7 excluded from the metes and bounds description which appeared in the mortgage to the furniture company.

Under the facts alleged the association was entitled to the relief prayed.

The case of *Beckius* v. *Hahn*, 114 Neb. 371, 207 N. W. 515, 44 A. L. R. 78, involved the right of reformation as against general creditors, and the annotator makes the following summary of the numerous cases there cited in his note: ''And while equity, as a general rule, will not exercise its jurisdiction to reform a written instrument to the prejudice of the intervening rights of *bona fide* purchasers or incumbrancers without notice of any equity

of reformation, it will exercise jurisdiction in this respect as against subsequent purchasers or incumbrancers who obtained their title or lien with notice of an existing equity of reformation, or who, for other reasons, do not stand as *bona fide* purchasers or incumbrancers for value, in the same manner and to the same extent as it would between the original parties." See, also, *Sherwin-Williams Co.* v. *Leslie,* 168 Ark. 1049, 272 S. W. 641.

The decree of the court below will therefore be reversed, and the cause will be remanded with directions to overrule the demurrer.