### BROWNING v. BERG.

4-5111

Opinion delivered June 13, 1938.

*John Sherrill* and *Frank Wills,* for appellants.
*Donham & Fulk,* for appellees.

GRIFFIN SMITH, C. J.  For herself, and on behalf of her minor children, Julia Koers Browning prosecutes this appeal from a decree awarding dower to Clara Berg Koers.  While the suit was pending Mrs. Koers died, and the action was revived in the name of Fred C. Berg, administrator, *et als.*

The administrator's intestate was the widow of George Victor Koers.  Mr. Koers is a brother of Mrs. Browning.

By will George V. Koers named Union National Bank trustee of his estate, directing payment to his wife of a sufficient sum "to support her in that degree and station of life to which she is entitled," to be not less than $100 per month; also, that she select any house to be used "free of any rent or other charges."  There was this provision: "In the event of the death of my wife, Clara Berg Koers, and there shall be no children of our marriage or any of their descendants surviving her, then upon her death the trust hereby created shall terminate and all of the property in the hands of the said trustee, including my accumulated income thereon, shall be by said trustee transferred, conveyed and delivered to the children of my sister, Julia Koers Browning, including any children which may be hereafter born to her prior to the date of the death of my wife. . . . In the event of any sale of real property by said trustee, I hereby request that my sister, Mrs. Julia Koers Browning, be given the opportunity to purchase said property at the price obtainable and acceptable to said trustee."

No children were born to Mr. and Mrs. Koers.

By appropriate proceedings Mrs. Koers renounced the will and elected to take dower, thereafter filing her complaint in chancery.  By an order of August 2, 1935, from which there was no appeal, the court determined that the value of personal property was $27,413.21, and assigned to Mrs. Koers a one-half interest therein, less $4,000 previously advanced.  There was a further finding that certain real properties in Pulaski and Lonoke

counties, owned by Koers at the time of his death, were new acquisitions, and that certain other properties were of ancestral origin. Included in the property acquired during the life of George V. Koers was the homestead in Little Rock. As to all new acquisitions the court found that the widow was endowed of an undivided one-half interest in fee simple. There was also a finding designating the ancestral estate, and that the widow was entitled to a one-half interest therein for life.

There was this further finding: "Commissioners should be appointed to lay off and assign to the plaintiff in severalty and in fee simple title her dower interest in that part of the real estate owned by George Victor Koers at the time of his death as a new acquisition, and to lay off and assign to said plaintiff in severalty, for and during her natural life, her dower interest in that portion of the aforesaid real estate owned by George Victor Koers as an ancestral estate; provided, that of the aforesaid real estate there shall be assigned to the plaintiff, to be held by her as tenant in common, with the owners, as tenants in common, of the other undivided interests therein, [certain other properties described in the decree]."

The commissioners named in the decree listed real property under eight descriptions of the aggregate value of $40,000. Following the itemization there is this: "Taking into consideration the cash or extrinsic value of said property, together with the quantity, quality and intrinsic value thereof and the legal interests of the plaintiffs and defendants in and to said property, and in carrying out the terms of the decree herein to lay off and assign to the plaintiff, Clara Berg Koers, in severalty her dower interest in the aforesaid real estate, we . . . have laid off and assigned to the plaintiff in severalty and in fee simple title the following." Five tracts were then described, of the aggregate value of $16,500, and it was said: "After making said assignment of said property in severalty and in fee simple title to the plaintiff as her dower interest in the real estate described in

said decree, there is left to the defendants in this action the following described real estate in fee simple title.''

Three tracts of the aggregate value of $23,500 are set out, with the comment: ''Your commissioners further state that they have used their best efforts in making the assignment of dower to the plaintiff in accordance with the provisions and terms of the decree.''

Among the five items aggregating $16,500 assigned to the widow in fee were lots 11 of block 425, and 19 of block 22, one-half being of ancestral origin, and one-half new acquisition. Full values were $2,500 and $4,500, respectively. Deducting one-half the value of lot 11 ($1,250), and one-half the value of lot 19 ($2,250) as interests apportionable to ancestral classification, it will be seen that of the five pieces of property recommended by the commissioners to be assigned to the widow in fee simple, one-half of the aggregate value of lots 11 and 19, or $3,500, was of ancestral origin, and such values were used by the commissioners in arriving at the recommended award of $16,500 to the widow in fee.

Report of the commissioners was filed January 22, 1936. March 26 exceptions were filed, in which it was stated: ''The commissioners . . . have laid off and awarded to Clara Berg Koers, the widow, all of the lands in which she holds any fee simple interest, although she only holds from a one-fourth to a one-half interest in each of said pieces of property; that they awarded to the defendants herein in fee only those properties which they already owned the entire fee of and in which Clara Berg Koers owns no portion of the fee. That said division is further unjust and unequal in that the properties awarded to Clara Berg Koers have an estimated net income annually of $2,355.87, whereas the property awarded the defendants has an estimated net annual income of only $1,309.98. That the proper division to make of said lands would be to divide the lands held as a new acquisition in said estate by awarding equal portions of said lands in value to plaintiff and to defendants and to permit the properties of the ancestral estate to continue in the possession of the trustee appointed in the

will, or such other trustee as may be selected by the court, and have said trustee divide the net income on said property between the plaintiff and the defendants.''

The report was approved and confirmed May 6, 1936.

September 28, 1936, there was this order: ''The death of Clara Berg Koers is suggested, and the court is of the opinion that the decree heretofore rendered in this cause should be vacated. . . . This order is granted to enable the defendants to present the matter at the coming term of court.''

In response to motion of November 7, 1936, to revive, it was urged: ''Final decree was entered in this cause on the 6th day of May, 1936, and no appeal has been taken therefrom. Clara Berg Koers died August 24, 1936. The order entered in this action on the 28th day of September, 1936, vacating and setting aside the decree, was made without notice to these defendants and without any petition being filed setting forth grounds for vacating said decree and without any testimony being heard in support of the order. . . . Said order . . . is therefore null and void. The term of court in which said decree was entered has lapsed, and this court does not now have jurisdiction to revive this action for any purpose whatever.''

A demurrer to the response was sustained, followed [December 8, 1937] by a decree confirming the report of the commissioners. There appears this language: ''The order entered September 28, 1936, setting aside the decree entered in this action on May 6, 1936, was not made upon a determination by the court that the decree entered May 6, 1936, was wrong, but solely upon the ground that the term of court was about to expire, and the decree was vacated solely for the purpose of enabling the defendants to present the matter further at a subsequent term of the court.''

The first question to be determined is whether the court erred in setting aside the decree of May 6.

The decree was set aside during the term in which rendered, and it is conceded by appellees that the general rule is that courts have the inherent right, during term,

to set aside judgments and decrees. It is urged, however, that there is an exception to the rule. Counsel say: "Even though the court did possess the inherent power to set aside and vacate the decree, appellees earnestly contend that it could not legally do so without good cause being shown therefor, or at least that it abused its discretion in so doing, and that the decree of May 6, 1936, became final and binding upon the appellants, and that an appeal from the decree of December 8, 1937, cannot afford them any relief." Attention is directed to *Underwood* v. *Sledge*, 27 Ark. 295; *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 694; *T. J. Moss Tie Co.* v. *Miller,* 169 Ark. 657, 276 S. W. 586; *American Building & Loan Association* v. *Memphis Furniture & Mfg. Co.,* 185 Ark. 762, 49 S. W. 2d 377, and *Hare* v. *Ft. Smith & Western Ry. Co.,* 104 Ark. 187, 148 S. W. 1038.

In none of these cases is there a holding that courts do not have the power, during term, to vacate judgments or decrees, and the law is otherwise. In *Union Sawmill Company* v. *Langley,* 188 Ark. 316, 66 S. W. 2d 300, it is said: "We have repeatedly held that, during the term of court at which a judgment is rendered, the court has the inherent power to set aside the judgment, and it may do so without stating any cause. . . . We know of no case . . . that prohibits a court from controlling its orders and judgments during the term in which they were entered." In an older case, *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674, we held that: During the term in which judgment was rendered, it might be set aside for sufficient cause without notice to the party affected, unless notice is required by statute or rule of court."

It may be urged that the language in the Langley Case, . . . "it may do so without stating a cause," impliedly holds there must be cause, but that such cause need not be stated by the court. In the instant case the chancellor, at the term from which this appeal comes, explained what his purpose was. Yet, regardless of the apparent sufficiency or insufficiency of the reason, the fact remains that it was the court's intention to set the decree aside, and this right is not to be denied. A suf-

ficient purpose was stated: . . . "to enable the defendants to present the matter at the coming term of court."

Section 4421 of Pope's Digest is: "If a husband die leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which said husband died seized, where said estate is a new acquisition and not an ancestral estate; . . . if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said estate as against collateral heirs."

The order of the court was that the commissioners should . . . "lay off and assign to the plaintiff in severalty and in fee simple title her dower interest in that part of the real estate owned by George Victor Koers at the time of his death as a new acquisition." . . .

The commissioners, in their report, stated that they had used their best efforts in making assignment of dower "in accordance with the provisions and terms of the decree."

No doubt the commissioners felt that the assignments were equitable; and, although the court, after having once confirmed and then set aside the report, again confirmed it, the presumption that the chancellor concluded to vary the original order must attach. It was within the power of the court, even after the commissioners made recommendations at variance with directions, to confirm the report on the theory that the result was equitable, and the original directions will be treated as amended. But this can not be done if recommendations are out of harmony with statutory provisions, or with decisions of this court.

In *Mayo* v. *Arkansas Valley Trust Company*, 132 Ark. 64, 200 S. W. 505, it was said: "Under the statute, the widow's dower is divided into two classes for the purpose of estimating dower, real and personal, and dower is to be set apart in each class separately, and no deficiency in one class can be made up from the other."

In Schribner on Dower, Second Edition, Vol. 2, page 585, it is said: "It is not competent to assign to the

widow a portion of the land in fee, equal to her dower in the whole, for this would be, in effect, to make her a coheir.''

In *Johnson* v. *Johnson*, 92 Ark. 292, 122 S. W. 656, it was held that the widow's dower should either· be carved out of the specific property possessed by the deceased husband or be allotted out of the proceeds of a sale thereof when it cannot be divided without prejudice, and that such portion of the proceeds should be paid to the widow in lieu of dower as to the court may seem equitable and just. [Quoting headnote.]

At the time this cause was finally heard, the widow had died, thereby terminating the life estate.

The will of George V. Koers expresses his wish that Mrs. Browning succeed to all rights not reserved to the widow; and, even if the widow did renounce the will, we must not lose sight of the fact that it was the testator's purpose to pass the property on to his own collateral heirs, should he and Mrs. Koers die childless.

If the showing had been that division of the real property could only be made through resort to substitutions not contemplated by the letter of the law, it would have been within the power of the chancellor to direct an equitable division by vesting and divesting titles within reasonable limitations. Here, however, there was no such showing. The decree is reversed, with directions to set aside the order of confirmation, to reopen the controversy, and to proceed in a manner not inconsistent with this opinion.