Beckius v. Hahn.

NICK BECKIUS, APPELLEE, v. WILLIAM HAHN ET AL.,
APPELLANTS.

FILED FEBRUARY 18, 1926. No. 23705.

1. Contracts: REFORMATION. In equity, the reformation of an instrument has the effect of making it express the real intent of the parties. The rights of the parties are measured by the instrument as originally intended, and the effect of the reformation, as a whole, should be to give all the parties all the rights to which they are equitably entitled under the instrument which they intended to execute.

2. ———: ———. Upon the reformation of an instrument, the general rule is that it relates back to, and takes effect from, the time of its original execution, especially as between the parties thereto and as to creditors at large and purchasers with notice.

3.     ———: ———: RIGHTS OF CREDITORS. The equity of reforma-
tion is superior to, and operative against, the demands of general
creditors, and is not affected by the subsequent rendition of
judgment in favor of a general creditor.

4.     ———: REFORMATION BY PARTIES. The parties to a contract
which, by mistake of the scrivener, does not express the mutual
intent of the parties may reform it voluntarily as effectively
as if reformation was decreed in an action in equity.

APPEAL from the district court for Butler county:
GEORGE F. CORCORAN, JUDGE. *Reversed and dismissed.*

*A. V. Thomas* and *Coufal & Shaw,* for appellants.

*George W. Wertz, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMP-
SON and EBERLY, JJ.

GOOD, J.

Plaintiff Beckius sued out a creditor's bill to set aside
two conveyances of real estate which he averred had been
made in fraud of creditors, and to subject the real estate in
said deeds described to the payment of his judgment against
defendant Cassie Hahn. A trial resulted in a decree can-
celing the deeds, and defendants have appealed.

The pertinent facts that give rise to this controversy and
concerning which there is no dispute in the evidence are as
follows: Defendants Eberly and wife, being each about
70 years of age, having four children, and possessing 960
acres of land, decided to make some provision for their
children. They decided to, and on October 15, 1919, did,
convey by deed to each of the four children 240 acres of
land, but reserving to the grantors for their lifetime pos-
session and use of the land. Defendant Cassie Hahn was
one of the four children. She had been married to William
Hahn for many years, and the Hahns had four children,
who were at the time minors, the oldest being 16 years of
age. Eberly knew that William Hahn, the husband of
Cassie, was given to speculating and was, as he termed it,

a "plunger." In making the conveyance to his daughter Cassie, he desired to do so in such manner that she should have possession and use of the land during her lifetime, without power to sell or incumber it, and that at her death it should go to her four children, and be so arranged that her husband, William Hahn, would have no control over the real estate. With this end in view, he sought the county clerk of Butler county, who was an honest, able and intelligent official, but was not a lawyer or skilled in the law. Eberly informed the county clerk of what he desired to do with respect to conveying the land to his daughter Cassie, and the county clerk undertook to draw a deed which would effectuate the purpose of the Eberlys. The scrivener of the deed used an ordinary form of warranty deed, but prepared and inserted therein the following provisions, which he believed, and informed Eberly, would effectuate his purpose: "Possession of said premises is hereby reserved by said grantors during the lifetime of said grantors, and this deed to become absolute and possession given upon the death of said grantors. This conveyance is made on the condition that the grantee shall not convey or incumber the above described premises during her lifetime. In the event grantee herein seeks to convey or incumber the same, this deed shall become absolutely void." The deed containing these provisions was delivered to Cassie Hahn and recorded on the 15th day of October, 1919.

In December, 1920, William Hahn, husband of Cassie Hahn, requested plaintiff Beckius to become surety on his promissory notes, aggregating $17,000. Plaintiff at first was apparently reluctant to sign. Hahn told plaintiff that his wife had 240 acres of land, and that, to secure him against possible loss, he would procure a promissory note, signed by his wife and his father, which plaintiff might hold to indemnify him against loss by reason of his becoming surety upon the obligations of Hahn. Plaintiff consented and signed the notes. About two weeks later, a promissory note signed by Cassie Hahn, and purporting to be signed

also by George Hahn, was delivered to plaintiff, pursuant to the arrangement theretofore made.

Later, Eberly was informed that the deed was probably insufficient to carry into effect the intent and purpose of the parties thereto, because it did not provide that the real estate would, on the death of the daughter, Cassie, become the property of her four children. In March, 1921, Eberly requested his daughter and her husband to reconvey the premises to him so that he could execute a new deed which would effectuate the real intent and purposes of the parties. Thereupon, a quitclaim deed was executed by Cassie Hahn and husband, reconveying the land to the Eberlys, and they, in turn, executed a new deed to Cassie Hahn, which contained, immediately following the description of the land, this provision: "For and during the term of her natural life; conditioned, however, that said Cassie Hahn, the grantee, shall not convey or incumber the same, nor permit, suffer, or cause the same to become charged or incumbered, and any attempt or sufferance on the part of said Cassie Hahn to convey, charge or incumber the same shall work defeasance of the contingent life interest herein granted, and upon the death of the said Cassie Hahn, the grantee above, or the defeasance of the estate herein to be granted, then unto Eloine Hahn, Ellis Hahn, Ruth Hahn and Robert Hahn, their heirs and assigns absolutely forever; reserving, however, unto said Levannes J. Eberly and unto Sarah Eberly, the grantors herein, the possession, use, income and enjoyment of the said premises and each and all of same for and during the natural life or lives of each of said Levannes J. Eberly and Sarah Eberly, the grantors herein." It is the last two mentioned deeds which plaintiff in this action seeks to set aside for fraud.

The evidence discloses that, at the time the two deeds in controversy were executed, Eberly had no knowledge that his daughter Cassie Hahn had incurred any liability to plaintiff, and no knowledge that she had incurred any indebtedness, save some obligation to a bank, the amount of which is not disclosed, and which is not in controversy

in this action.   There is no evidence that the children of Cassie Hahn had any knowledge or information that she was incurring or had incurred any indebtedness or liability to the plaintiff; nor did plaintiff have any conversation with Cassie Hahn or any statement or representation from her as to her ownership of the land, or her interest therein, prior to the time he signed the notes as surety for William Hahn.   In fact, at the time he signed these notes he did not even have the assurance of Cassie Hahn that she would execute the note which had been promised by her husband. In signing the notes as surety for William Hahn, he relied solely upon the statements and representations of Hahn that his wife owned the land and that she would execute a note to him as indemnity.

From the facts disclosed, it is clear that the deeds in controversy were given for the purpose of reforming the deed of October 15, 1919, so as to conform to the mutual intentions of the parties, and that the latter deeds were executed without any actual intent to defraud the plaintiff or any one else.   The trial court based its decree upon the fact that the title apparently conveyed by the deed of October 15, 1919, was in Cassie Hahn, and that plaintiff, having knowledge of such conveyance and relying upon the supposed fact that she was the owner of the premises, signed the notes as surety for William Hahn, and that the subsequent conveyance reforming the original instrument was, in law, a fraud upon plaintiff, for which he was entitled to have the conveyances set aside.

The question as to whether or not plaintiff is entitled to any relief depends upon the right of Eberly to have the original deed to his daughter, Cassie, reformed so as to reflect the intention of the parties.   In equity the reformation of an instrument has the effect of making it express the real intent of the parties.   The rights of the parties are measured by the instrument, as originally intended, and the effect of the reformation, as a whole, should be to give all the parties all the rights to which they are equitably

entitled under the instrument which they intended to execute.

Except as to *bona fide* purchasers without notice and those standing in similar relations, upon the reformation of an instrument, the general rule is that it relates back to, and takes effect from, the time of its original execution, especially as between the parties thereto and as to creditors at large and purchasers with notice. 34 Cyc. 999, 1000.

In 23 R. C. L. 343, sec. 36, it is said: "The equity of reformation is superior to and operative against creditors, whether they are judgment or attachment creditors or general creditors. The equity attaches to the property contemporaneously with the execution of the deed or mortgage, and is prior in time to and is not defeated by the rendition of a judgment and the levy of an execution; furthermore, a creditor stands in no better position than his judgment debtor, and the rendition of a judgment and a levy of execution vest in the judgment debtor no greater title than he had before."

Applying these principles to the case in hand, it seems clear that Eberly was entitled to have the deed to his daughter reformed. It was his property and his bounty he was bestowing upon his daughter and grandchildren. The intention of Eberly, and acquiesced in by the daughter, was not effectuated by his first deed. On discovering that the deed conveyed a greater estate to the daughter than intended by both parties thereto, and that it conveyed nothing to his grandchildren, as both parties intended it should do, he could have gone into a court of equity and compelled a reformation. Certainly the parties may do voluntarily that which a court of equity would have compelled them to do. The parties, then, having voluntarily reformed the deed, the effect is as though the original deed had expressed the intention of the parties. Plaintiff was not a *bona fide* purchaser, nor does he stand in the same relation as one. At the time the deed was voluntarily reformed, he had not reduced any claim to judgment and had acquired no lien upon the real estate. He was simply an ordinary creditor,

Beckius v. Hahn.

and, as such, his rights must be measured, unless Eberly has been guilty of some conduct that would estop him from insisting on the reformation of the deed. His daughter was not engaged in trade or business, and he had no reason to anticipate that she would incur obligations on the strength of her apparent ownership of the real estate. We find nothing in the record to justify a holding that he was guilty of any conduct that would have precluded him from resorting to equity to compel reformation had his daughter refused consent to a voluntary reformation.

The case of *Stone v. Hale,* 17 Ala. 557, 52 Am. Dec. 185, presents a situation very similar to that in controversy. It was there held that a deed from a father to daughter might be reformed, notwithstanding the claims of creditors of the husband, and that the interests of the parties under the reformed deed are paramount to those of judgment creditors.

It must not be overlooked that Cassie Hahn had not created, or attempted to create, any lien upon the real estate, or her interest therein, prior to the voluntary reformation, nor had she made any representation to the plaintiff as to her ownership or interest in the premises. Plaintiff was required to take notice of what the public record disclosed at the time he became surety for William Hahn. The record at that time informed him that Cassie Hahn could not sell, or incumber, or create a lien upon the real estate. We reach the conclusion that the conveyances in question were not fraudulent, and that plaintiff was not entitled to have them canceled. The judgment of the district court is, therefore, reversed and the cause dismissed.

REVERSED AND DISMISSED.