M. T. STRAIGHT'S TRUST, Francis L. McCrea, Trustee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15458.

United States Court of Appeals Eighth Circuit.

June 7, 1957.

Richard E. Williams, Des Moines, Iowa, for petitioner.

Melva M. Graney, Atty., Dept of Justice, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., and Lee A. Jackson, Hilbert P. Zarky and Louise Foster, Attys., Dept. of Justice, Washington, D. C., were with her on the brief), for respondent.

Before STONE (retired), WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

STONE, Circuit Judge.

Merton T. Straight was one-half owner of a partnership—the Adel Clay Products Company. December 31, 1945, he executed an instrument conveying irrevocably "Three-fourths of his half interest in the partnership" to trustees in trust for the benefit of his wife, a daughter and a son (with two sisters as ultimate contingent beneficiaries), one-third of the annual income therefrom to be paid to each of the three primary beneficiaries with provisions for payments to either of the two children in the discretion of the trustees. In view of the issues presented here, it is unnecessary to detail the provisions of this trust instrument in full. It declared the fullest control of the corpus as to invest-

ment, changing and treatment thereof in the trustees. The payments were to the wife, one-third of the income from the trust annually; and to each of the two children annually such part of the income, "but not exceeding one-third", as the trustees may determine "is necessary for his [her] education, comfort and support".

In 1946–1948, the trustees filed separate annual income tax returns for each of the three beneficiaries. The revenue officials challenged this method and insisted that there should be but one annual return to cover all of the three beneficiaries, thus treating the annual earnings of the trust as a unit for taxation purposes. We need not detail the various proceedings in connection with this controversy between the trustees and the tax officers as to whether this trust deed created three separate units or only one unit for national income tax purposes. It suffices to state that the trustees finally paid the claimed deficiencies on August 15, 1952, and, on August 15, 1952, filed a petition for refund in the Tax Court claiming that the trust deed created three separate trust estates for income tax purposes.[1]

On August 13, 1953, in an Iowa State Court, Merton T. Straight filed a petition in equity for reformation of this trust deed to carry out his intention to establish separate trust estates—one each for his wife, for his daughter and for his son respectively. Neither the Commissioner nor any governmental officer or agency was made a party to this action; nor did such participate therein. On September 18, 1953, after trial, the Iowa Court entered a decree declaring that Straight had always thought and intended to create three separate trusts by the trust deed of December 31, 1945; that the trustees had always thought and administered that deed as creating three separate trusts; had set up and maintained a separate set of accounts for each of the three trusts; had distributed to the three beneficiaries on that basis; and that the original trust deed was ambiguous.

To rectify this situation, the chancellor entered a decree approving three separate trust deeds—one for each of the primary beneficiaries; declared them to express the true intent of the grantor (Straight); and declared such substitution to relate back "nunc pro tunc" to the execution of the original trust deed.

September 20, 1954, petitioner filed an amended petition before the Tax Court. The amended petition set forth a resume' of the reformation proceedings and prayed the Tax Court to determine that the original trust deed created three "separate and distinct taxable entities"; that the liabilities and deficiencies set forth in the Notice of Deficiency against the M. T. Straight Trust[2] be eliminated; and that the reformation decree "is binding on the Commissioner of Internal Revenue, Respondent herein, in connection with the determination of the tax liability of the Petitioner for the calendar years 1947 and 1948".

In the "Stipulation of Facts", filed in the Tax Court (September 20, 1954) is the following: "The petitioner is not contesting the proposed deficiencies shown in the Notice of Deficiency on any ground other than that arising from respondent's [Commissioner of Internal Revenue] determination that the trust conveyance of December 31, 1945, Exhibit 1–A, created an entity taxable for the years 1947 and 1948 as a single trust, despite the reformation proceedings in the Iowa courts referred to above in paragraphs 12 to 16, inclusive."

June 14, 1955, the Tax Court entered its decision, determining tax deficiencies for the years 1947 and 1948 in the amounts of $3740.65 and $411.34 respectively. From that decision of the Tax

1. March 26, 1952, a Claim for Refund in respect to the 1946 tax payment was filed. Final action on this claim has been deferred pending decision in this proceeding now before us.

2. For identification and distinction from the three separate deeds formed by the Iowa State Court, the parties have called the original trust deed dated December 31, 1945, the "M. T. Straight Trust".

Court, one of the trustees brings this petition for review.

The issues before the Tax Court and now before us are whether the *nunc pro tunc* reformation decree of the Iowa State Court is effective, for federal income tax purposes, from the date of the original trust deed of December 31, 1945. The Tax Court held that it was not effective for the years 1947 and 1948. The other issue is whether the original trust deed (December 31, 1945) created a single entity for income tax purposes.

■ We have no hesitation in declaring that the original trust instrument of December 31, 1945 provided for a single tax unit for federal income tax purposes. There is no dispute that this instrument provided for but one pair of trustees to whom was placed in trust one corpus, described as "Three-fourths of his half interest in the partnership known as the Adel Clay Products Company". There was no segregation of this into three trust entities. It was a single trust designating and conveying a definite single corpus. Clearly, the trust was to be administered as a unit without any separation into three separate trusts. The Commissioner was fully within his rights and duties in determining that the annual return for income tax purposes should cover the entire income from the trust as a single unit for national income tax purposes.

■ The remaining issue here is what effect has the Iowa decree of reformation retroactively on the tax years 1947 and 1948. We pass to consideration of the effect of the Iowa Court's *nunc pro tunc* decree. The intention of that Court to include these tax years (1946–1948) is clear. The language of the decree "*nunc pro tunc*" is definite. The broad rule as to the effect of a reformation decree is that it relates back to the date of the instrument reformed and is binding upon all except bona fide purchasers without notice "and those standing in similar relations"[3]—in short, covering those who have acquired some legal rights which would be destroyed or injured by subsequent reformation *nunc pro tunc*. It is clear that the main object and effect intended by the taxpayer in bringing and prosecuting the Iowa case was to lessen the national income tax for the years involved. The annual loss of income would be the difference between the tax calculated upon the entire income as a taxable unit and the tax on the same amount of income treated as derived from three taxable units, each having one-third of the total income.[4] The situation which determined the application of the income tax to these two years had occurred and become fixed before this reformation proceeding was filed. We believe it cannot be altered by a *nunc pro tunc* decree of a state court. The national revenue is not subject to such control.

We think that the Iowa decree cannot be effective retroactively to cover the two years—1947 and 1948. We recognize that an unqualified reformation decree ordinarily reforms an instrument as of the date of the instrument reformed. Also, we recognize that property rights are subject to determination by State laws and therefore within the jurisdiction of the State Courts to declare. However, our issue here is more confined to a particular and narrow situation where the above general rules must give way.

■ The reformation of instruments is purely an equity remedy and its every application must lead to equitable results. We think that it is both inequitable and beyond the power of a State Court to change retroactively the status of a federal revenue measure with a resulting loss of revenue to the government. As said in Sinopoulo v. Jones, 10 Cir., 154 F.2d 648, at 650:

"The liability of appellant for the income tax chargeable to the income of the

---

3. Beckius v. Hahn, 114 Neb. 371, 207 N.W. 515, 44 A.L.R. 73.

■

4. We are strictly confining this opinion and decision to the years—1947 and 1948—which are the only tax years involved.

trusts for the years in question must be determined from the provisions of the trusts prior to their reformation by the state court. While the judgment of the state court made the reformation of the trusts retroactive and effective as of the date of the execution, this could not affect the rights of the government under its tax laws. It is a general rule that as between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof."

The judgment of the Tax Court is affirmed.