**In re A.P.I. INC., Debtor.**

No. 05–30073.

United States Bankruptcy Court,
D. Minnesota.

April 29, 2005.

James L. Baillie, Fredrikson & Byron PA, Minneapolis, MN, for Debtor.

ORDER DENYING MOTION OF GREAT AMERICAN INSURANCE COMPANY FOR TRANSFER TO THE UNITED STATES DISTRICT COURT, AND DENYING CERTAIN OTHER PARTIES' DEMANDS FOR JURY TRIAL

GREGORY F. KISHEL, Chief Judge.

This Chapter 11 case came on before the Court on March 23, 2005, for hearing on a motion by Great American Insurance Company ("GAIC"), styled as one under Loc. R. Bankr.P. (D.Minn.) 5011–3(a). Appearances were Katherine Windler on behalf of GAIC; James L. Baillie on behalf of the Debtor; David C. Christian, II on behalf of Continental Casualty Company and Transportation Insurance Company (collectively, "CNA"), and Alan Pedlar on behalf of Thomas Carey, the "Legal Representative" under the Debtor's proposed plan. Upon the moving and responsive documents, the arguments of counsel, and other relevant parts of the record in this case, the following decision is memorialized.

The Debtor commenced this case by a voluntary petition filed on January 6, 2005. The Debtor is in the business of installing insulation at large industrial and commercial sites. Until 1973, it used insulation materials that contained asbestos. Over the last two decades, it has been named as a defendant in several thousand product-liability lawsuits arising out of its use of asbestos products. Approximately 700 of these lawsuits were pending when the Debtor filed for bankruptcy relief. The mounting of difficulties in these lawsuits prompted the Debtor to prepare for a Chapter 11 filing; several of its liability insurers had asserted that the aggregated claims had reached the limits of coverage under policies they had issued to the Debtor, and they were declining to further defend and indemnify. When the Debtor filed for bankruptcy, a declaratory judgment action over the coverage issue was pending in the Minnesota State District Court for the Second Judicial District, Ramsey County.

The Debtor filed a plan of reorganization in this case on January 7, 2005. When it filed the plan, it sought to obtain confirmation of a "prepackaged plan" on an expedited basis. It proffered the results of a pre-petition solicitation of acceptances pursuant to 11 U.S.C. § 1126(b) to satisfy the general requirements of 11 U.S.C. §§ 1129(a)(7)-(8) and (10). Via the plan, the Debtor would establish a trust under 11 U.S.C. § 524(g)(2)(B). The trust would assume liability for the asbestos-related claims against the Debtor and would fund payment on account of those claims from assets that it would receive post-confirmation. The Debtor contemplated that those assets would include "proceeds received" on account of its status as an insured under the policies of liability insurance that it has maintained over the years; it proposed to assign to the trust its rights, if any, under the policies. A number of the Debtor's insurers early announced their intentions to object to confirmation on procedural and substantive grounds.

Between January 18 and January 20, 2005, five of the insurers filed demands for a jury trial on "all issues so triable respecting the proposed Plan of Reorganization of A.P.I., Inc., dated December 15, 2004." [1] Pursuant to an agreed case procedures order, several insurers filed summaries of their objections to confirmation between January 27, 2005 and February 23, 2005.

The motion at bar brings the insurers' jury demands to a head. Through it, GAIC seeks to have "all insurance issues raised by the Plan of Reorganization"—or, alternatively, "this entire proceeding"—transferred to the United States District Court "for jury trial." GAIC styles its motion under Loc. R. Bankr.P. (D.Minn.) 5011–3(a). [2] GAIC does not invoke Loc. R. Bankr.P. (D.Minn.) 9015–1(d), as such. [3] However, the inquiry contemplated by that rule is clearly the threshold issue in GAIC's motion; because of the structure of Local Rule 5011–3(a)(1), it is essentially the only one. Because demands for jury trial were filed, the exercise must be performed before a confirmation hearing may be convened. Fed.R.Civ.P. 39(a). [4]

The Bankruptcy Code contains no provisions governing the right to jury trial in cases commenced under it. Thus, if GAIC has a right to jury trial, it must arise under the Seventh Amendment to the United States Constitution. As it turns out, the very wording of that amendment is crucial to the motion at bar:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court reiterated its two-part test for determining the right to jury trial under the Seventh Amendment in a civil proceeding that is founded on a modern statute: "First, we compare the statutory *action* to 18th-century *actions* brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." 492 U.S. at 42, 109 S.Ct. 2782 (quoting *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)) (emphasis added).

1. The parties that filed these demands are GAIC, Continental Casualty Company and Transportation Insurance Company (acting jointly), U.S. Fire Insurance Company, and Fireman's Fund Insurance Company.

2. In pertinent part, this rule provides:
   On the judge's own initiative or on motion of a party in interest, the bankruptcy judge shall transfer to the district court: 1) any proceeding in which the court has determined that there is a right to trial by jury of the issues for which a jury trial has been timely demanded, and the parties have not consented to the bankruptcy judge conducting the jury trial ...
   All of the insurers have affirmatively stated that they do not consent to a bankruptcy judge conducting the jury trials they have demanded.

3. In pertinent part, this rule provides:
   On motion or on its own initiative the court may determine whether there is a right to trial by jury of the issues for which a jury trial is demanded ...

4. Fed. R. Bankr.P. 9015(a) makes this rule applicable to demands for jury trial in bankruptcy cases and proceedings. In pertinent part, Fed.R.Civ.P. 39(a) provides:
   When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless ... the court ... finds that a right of trial by jury ... does not exist under the Constitution or statutes of the United States.

*See also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

The theory of GAIC's motion is two-pronged; it seeks alternate structures of relief.

The first prong breaks down on the most basic level of analysis, the type of court function for which a jury trial is guaranteed. As its first alternative, GAIC would have "a host of contested confirmation issues" "transferred" to the district court, for trial to a jury in that forum.[5] This request is flipped off, almost blithely; however, anyone who actually administers a judicial process of dispute resolution is immediately triggered by the vagueness of its phrasing.

GAIC seems to contemplate a process under which isolated "issues" raised in objections to the confirmation of the Debtor's plan would be identified and extracted from those objections; somehow framed and memorialized by this court; and then "transferred" to the district court through some means—there to be presented to a jury for some unspecified process of fact-finding. GAIC did not specify what a jury was to do in this context: was it to answer special interrogatories on precise points of fact? Or was it to perform like a jury does more traditionally in a full civil suit, taking legal instruction from a presiding judge and then rendering a sort of general judgment on unexpressed subsidiary findings?[6] Finally, GAIC did not identify what was to be done with the results of such fact-finding after the jury had finished. At oral argument, counsel's explanation was not much more clear than in the briefing, other than to suggest that the submission of these "insurance issues" to a jury would be made in the course of the trial in the pending coverage action.[7]

■ With the nature of the proposal limned as such, it is no wonder that GAIC was unable to cite any case law authority for its first alternative. The Seventh Amendment preserves a right to have fact-finding performed by a particular institu-

---

**5.** In its original briefing, GAIC stated that these "issues" were the ones raised by Section 9.1(a) of the Debtor's original plan. Under Section 9.1(a), confirmation of the Debtor's plan was to be conditioned on the court making specific "findings and determinations" on various issues. The proposed "findings" were 23 in number. They included several rulings that the Debtor was not violating its various legal and contractual duties as insured by formulating and proposing the plan and by assigning its insurance rights to the trust. GAIC argued that such "findings" were essentially declaratory judgments on issues under nonbankruptcy law, and that as such it had the right to have them presented to a jury. In response to the insurers' initial statements of objection, the Debtor modified its plan to delete the requirement that these "findings" be made, and indeed to delete any summary or mention of their content. This undercut much of the thrust of GAIC's argument for this motion. Nonetheless, GAIC maintains its objections to confirmation in which it complains of the Debtor having excluded the insurers from the negotiation of the plan-casting that one under the "good faith" requirement of 11 U.S.C. § 1129(a)(3)—and it still argues that the proposed assignment of insurance rights and the distribution procedures for the trust violate law and contract alike. GAIC is driving for rulings on the nature and legal source of these issues, in the context of this notion. Ultimately, though, it is not necessary to characterize these "issues" as ones of bankruptcy law or of the law of contract or insurance, in order to dispose of the insurers' contentions under the Seventh Amendment.

**6.** And if it were to be the latter, GAIC certainly did not address the conundrum of having the jury express a result in a form like a judgment without having the full array of the parties' issues before it for a single, final determination through its offices.

**7.** On January 21, 2005, CNA had removed the coverage action to the United States District Court for this District, under color of 28 U.S.C. § 1452(a).

tional participant in the judicial system, but only in "*Suits* at common law." (Emphasis added.) The Supreme Court's analysis, in *Granfinanciera* and its predecessors, uses the word "action" for the thing that is to be tried, to a jury or not. Under the immemorial understanding of our Anglo–American system, both of these words define out as *a lawsuit as a whole:*

> **suit.** Any proceeding by a party or parties against another in a court of law . . . See ACTION.

BLACK'S LAW DICTIONARY 1448 (7th ed.1999).

> **action** . . . . 3. A civil or criminal judicial proceeding.

*Id.* at 28.

> **proceeding. 1.** The regular and orderly progression of a lawsuit, including *all acts and events* between the time of commencement and the entry of judgment.

*Id.* at 1221 (emphasis added).

From either a technical perspective or a layperson's, "issues" of fact are not commonly understood as being the *only* components of a lawsuit, however much a lawsuit contains "issues." The Founders could not have contemplated anything more involved than the one simple concept identified on the face of the Amendment. GAIC certainly does not cite to any evidence that they did.

The equating of the two would not work from the standpoint of function, either. As an isolated act, fact-finding does not in itself bring about a comprehensive and final determination of parties' rights, liabilities, and legal posture. That is the function of an order or judgment, the structuring of which necessitates an overlay of the law onto the facts as found. GAIC does not even suggest that a jury's determination of its severed "issues" would result *in itself* in such a final adjudication.

■ From definition, logic and real-life practice, the point is self-evident: a group of subsidiary fact disputes that might be present in a complex statutory proceeding for the adjustment of debtor-creditor relationships does not, in itself, constitute or equate to a "Suit at common law." This is particularly compelling when the proceeding involves other disputes of fact or law that would not so equate, and (as GAIC admits) would not entail a constitutional right of trial by jury.

■ GAIC has presented no palpable support in history or logic for its first alternate assertion of a right to jury trial. There is nothing to disturb the customary understanding that the unitary, organized, sequential procedure of a full lawsuit, the teleological process for the comprehensive adjudication of rights and liabilities "at common law," as they pertain to a full matter in controversy between parties, is the only platform that the Founders envisioned for the process of jury trial that they were protecting. Hence, there is no basis for the "transfer" to the district court of a bundle of specific issues from this case.[8]

GAIC's proffered alternative was to "transfer[ ] *this entire proceeding* to the District Court for jury trial of all issues so triable." (Emphasis added.) Once again, the way in which GAIC identified its subject was unclear. Because the "proceeding" was not qualified by nature or type, one could not tell whether counsel was

---

8. As previously noted, GAIC's counsel identified only one platform through which the "issues" would be submitted to a jury in the district court: attachment to a lawsuit then pending there. The platform has since fallen, due to an intervening development: on March 23, 2005, after the hearing on the motion at bar, the District Court (Magnuson, J.) abstained from the coverage action and remanded it to the Ramsey County District Court. Independent of any consideration of the Seventh Amendment's abstractions, GAIC's first theory fails for lack of its assumed infrastructure in the federal courts.

falling prey to the common imprecision of conflating a "proceeding" in a bankruptcy case with the bankruptcy "case" itself, thereby suggesting a "transfer" of the entire case to the District Court, or whether it just meant the proceeding to obtain confirmation of the Debtor's plan.[9] The wording of GAIC's supporting memorandum did not greatly resolve the confusion; it characterized the Debtor's plan as "in effect, a request for declaratory relief regarding the parties' respective contractual rights and obligations" under the various insurance contracts, and accused the Debtor of seeking "relief ... clearly analogous to a breach of contract claim" via the confirmation of its plan. In GAIC's view, the Debtor's right to confirmation could only be reached after a jury trial because the requests for relief that it attributed to the Debtor were analogous to remedies at law that would trigger a Seventh Amendment right for the affected insurers.

At oral argument, counsel finally did specify that GAIC urged a transfer of the confirmation proceeding alone, not the whole case. With its subject identified as such, the second prong of GAIC's theory fails muster under the Supreme Court's longstanding "historical test," applied in the bankruptcy context in *Granfinanciera* and more recently discussed in *Markman v. Westview Instruments, Inc.*

■ The first stage of that test requires a comparison of the modern "statutory action" at bar with the variety of actions brought in the courts of England before the United States adopted the Constitution and before the merger of the courts of law and equity. *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782; *Markman*, 517 U.S. at 377, 116 S.Ct. 1384. In the matter at bar, this inquiry early hits a stop; the complex of remedies administered upon the confirmation of a plan of reorganization under the Bankruptcy Code was unknown in the late eighteenth century. Claire Priest, *Colonial Courts and Secured Credit: Early American Commercial Litigation and Shays' Rebellion*, 108 Yale L.J. 2413, 2444 n. 128 (1999) ("In the 18th century, there was no system like the current Chapter 11 regulations to rationalize the process of distribution of the debtor's assets."); John M. Czarnetzky, *Time, Uncertainty, and the Law of Corporate Reorganizations*, 67 Fordham L.Rev. 2939, 2966–2977 (1999). In such a case, "[w]here there is no exact antecedent, the best hope lies in comparing the modern practice to earlier ones whose allocation to court or jury we do know," with the use of "appropriate analogies" between types of court proceedings if that is all the more that can be gleaned. *Markman*, 517 U.S. at 378, 116 S.Ct. 1384 (citing *Tull v. United States*, 481 U.S. 412, 420–421, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)).

Here, that exercise overlaps with the second stage of the historical analysis, which in any event is the "more important" of the two, *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782. This entails a determination of the basic nature of the modern remedy in question, and its classification as "legal or equitable." *Id.* Both inquiries

---

**9.** The structure for federal jurisdiction over bankruptcy matters has been on the books for over two decades now, since the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333. As Judge Kressel noted very early on, one of the hallmarks of that structure is the distinction between a bankruptcy *case* and the *proceedings* within it. *See In re Northwest Cinema Corp.*, 49 B.R. 479, 480 n. 4 (Bankr.

D.Minn.1985). *See also In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 980 (D.Minn. 1989); *In re Arctic Ents., Inc.*, 68 B.R. 71, 76 n. 4 (D.Minn.1986). Despite the longstanding constructions of these statutory terms of art, references to "bankruptcy proceeding" still regularly crop up in attorney's arguments and even appellate opinions, when the subject clearly is a bankruptcy case as a whole.

require one to identify just what happens via the confirmation of a plan of reorganization: just what "remedy" or "remedies" are afforded to the proponent of a plan via confirmation, and how do they relate to the traditional distinction between law and equity? At least before *Markman*, prominent commentators observed that this could be a difficult undertaking. *E.g.*, Douglas G. Baird, *Jury Trials After Granfinanciera*, 65 Am. Bankr.L.J. 1, 6–7 (1991).

■ *Markman*, however, authorizes a process of analogizing—and for the sake of an historical comparison the most appropriate analogies can be drawn on the basis of function. In terms of legal function, reorganization under Chapter 11 is a vehicle for the comprehensive adjustment of the relationships that a debtor had with its creditors under pre-petition law and contract. *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir.1997); *In re Ridgewood Apts. of DeKalb County, Ltd.*, 174 B.R. 712, 720 (Bankr.S.D.Ohio 1994); *In re Kellogg Sq. P'ship*, 160 B.R. 336, 339 (Bankr.D.Minn.1993); *In re Cary Metal Prods., Inc.*, 152 B.R. 927, 932 (Bankr.N.D.Ill.1993). In a general sense, a plan of reorganization is very much a "new contract," running among all such parties. *In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 744 (8th Cir.2003); *In re Kellogg Sq. P'ship*, 160 B.R. at 339; *In re Harstad*, 155 B.R. 500, 510 (Bankr.D.Minn.1993), *aff'd*, 39 F.3d 898 (8th Cir.1994); *In re*

*Ernst*, 45 B.R. 700, 702 (Bankr.D.Minn. 1985). *See also In re Troutman Ents., Inc.*, 253 B.R. 8, 11 (B.A.P. 6th Cir.2000); *In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 382 (Bankr.N.D.Okla.2004). The terms of this "new contract," applicable to creditors as a collective, supplant the debtor's pre-petition payment obligations to its creditors. *In re Dial Bus. Forms, Inc.*, 341 F.3d at 743 n. 3; *In re Consumers Realty & Dev. Co.*, 238 B.R. 418, 425 (8th Cir. BAP 1999). *See also In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir.1992); *In re Friedberg*, 192 B.R. 338, 341 (S.D.N.Y.1996); *In re Lacy*, 183 B.R. 890, 892 n. 1 (Bankr.D.Colo.1995). The reorganizing debtor's ability to rewrite the terms of its earlier bargains is circumscribed by the Bankruptcy Code's substantive requirements for confirmation, particularly its general "floor" for the treatment of all claims under 11 U.S.C. § 1129(a)(7)(A)(ii) and its more specific standards for the treatment of secured creditors' claims under 11 U.S.C. § 1129(b)(2)(A) and of unsecured claims under 11 U.S.C. § 1129(b)(2)(B).[10] Once a debtor has met these substantive requirements for treatment of claims; has obtained creditors' acceptance of the plan, 11 U.S.C. § 1129(a)(8)(A), or has proved up "cram down" under §§ 1129(a)(7)(A)(ii), 1129(a)(7)(B), and 1129(b); and has demonstrated that the plan is feasible, 11 U.S.C. § 1129(a)(11), the court may confirm the plan.

---

**10.** The general principle behind these substantive provisions is that under a plan each creditor must receive at least the present value of the realization on its claim against the debtor that it would stand to receive currently, *de facto*, were the debtor's enterprise liquidated in bankruptcy: for secured creditors, in that right, on an individualized basis according to the current value of their collateral; and for unsecured creditors in collective groupings, subject to statutory priorities of payment and a pro rata distribution within each priority, ultimately gauged against the

amount of net equity in the debtor's business enterprise. *In re Crosscreek Apts., Ltd.*, 213 B.R. 521, 541 (Bankr.E.D.Tenn.1997), and *In re Mattson*, 210 B.R. 157, 159 (Bankr.D.Minn. 1997) (both as to § 1129(b)(2)(A)); *In re Grandfather Mtn. L.P.*, 207 B.R. 475, 493 (Bankr.M.D.N.C.1996), and *In re HRC Jt. Venture*, 187 B.R. 202, 210 (Bankr.S.D.Ohio 1995) (both as to § 1129(b)(2)(B)). *See, generally,* 7 Collier on Bankruptcy ¶¶ 1129.05–.06 (15th ed. rev.2005); *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 35 (Bankr.D.Kan. 2001).

Confirmation in turn binds all creditors to the terms of the plan, regardless of whether they have individually accepted it. 11 U.S.C. § 1141(a); *In re Arctic Ents., Inc.*, 68 B.R. at 78–80; *In re Emmer Bros. Co.*, 52 B.R. 385, 390 (D.Minn.1985). Confirmation discharges the debtor from all obligations of payment and other rights of creditors to realize against the debtor and its property, 11 U.S.C. § 1141(d)(1)(A), other than those obligations preserved or imposed by the plan.

In function and result, the rewriting of contractual obligations otherwise enforceable at law, the confirmation of a plan most resembles the traditional remedy of reformation of contract. Both remedies override the operation of the law—under which the presumption is that contracts are to be enforced according to their terms—to impose new terms of obligation and entitlement on both parties. They both "rewrite" the facial terms of the contract, substituting new expectations for those otherwise created by operation of law. *See*, as to reformation, *Commercial Standard Ins. Co. v. Maryland Cas. Co.*, 248 F.2d 412, 415 (8th Cir.1957) (restrictions on parties' legal power to modify contract do not prevent court from granting remedy of reformation).

Of course, reformation is one of the classic remedies *of equity. Great Atlantic Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 979 (8th Cir.1985); *M.T. Straight's Trust v. C.I.R.*, 245 F.2d 327, 329 (8th Cir.1957). It operates as all equitable remedies do, to "override[ ] the result that would come from the strict application of legal principles," *In re Buckles*, 189 B.R. 752, 765 (Bankr.D.Minn.1985), "to do justice where a strict application of the law fails ...," *Denton v. Gurnett & Co.*, 69 F.2d 750, 755 (1st Cir.1934). By analogy based on function, then, the confirmation of a plan of reorganization is also "equitable in nature," *Granfinanciera*, 492 U.S. at 37, 109 S.Ct. 2782.[11] Under the dichotomy at the heart of the Supreme Court's Seventh Amendment analysis back to *Parsons v. Bedford*, 3 Pet. 433, 7 L.Ed. 732 (1830), there is no constitutionally-protected right to jury trial in a proceeding for confirmation of a plan of reorganization. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. at 41–42, 109 S.Ct. 2782. The second prong of GAIC's argument thus fails, on its substantive theory.

Because the insurers have no constitutionally-protected right to jury trial under either of their proposals,[12] there is no basis

11. One could quibble that the external guide for the structuring of relief is quite different between the two remedies—for reformation, the extrinsically-evidenced actual intent of the parties, *Great Atlantic Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d at 979, versus the Bankruptcy Code's various thresholds for treatment of creditors' claims. However, the *nature* of the remedy is the same: the reconfiguration of contractual terms to achieve a result deemed to be just. The difference in reference points does not make a distinction.

12. Even though GAIC was the only formal movant, this ruling is being applied to all parties that filed demands for jury trial. All of the others were well on notice of GAIC's motion and the breadth of the issues raised by

it; they could have come forward in their own right, and should and will be bound to the result here. And, in the last instance, Rule 39(a)(2) authorizes the court to determine the right to jury trial on its own motion. *Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 477 (9th Cir.1994); *Wauhop v. Allied Humble Bank, N.A.*, 926 F.2d 454, 455 (5th Cir.1991); *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1215 (5th Cir.1986); *Francis v. Dietrick*, 682 F.2d 485, 486 (4th Cir.1982). The motion at bar, ultimately unfounded in theory, was a large distraction from the serious unsettled substantive issues posed by this case. This ruling is to end any further game-playing on the jury trial issue, just in case any of the other insurers contemplate their own motions.

for transferring either selected "issues" or the whole proceeding on confirmation of the Debtor's plan to the District Court. Accordingly,

IT IS HEREBY ORDERED:

1. The demands of Great American Insurance Company, Continental Casualty Company and Transportation Insurance Company, U.S. Fire Insurance Company, Fireman's Fund Insurance Company, St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company for trial by jury in any aspect of the confirmation proceeding in this case are denied.

2. GAIC's motion for transfer of "issues" or proceedings to the District Court is denied.